# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RAVIN CROSSBOWS, LLC, | ) | CASE NO. 5:23-cv-598 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| HUNTER'S MANUFACTURING | ) | **MEMORANDUM OPINION** |
| COMPANY, INC. d/b/a TENPOINT | ) | **AND ORDER** |
| CROSSBOW TECHNOLOGIES, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of the plaintiff, Ravin Crossbows, LCC ("Ravin"), to strike supplemental invalidity contentions provided by defendant Hunter's Manufacturing Company, Inc. d/b/a TenPoint Crossbow Technologies ("TenPoint"). (*See* Doc Nos. 139 (Brief in Support), 141 (Brief Regarding Supplemental Invalidity Contentions).[1]) For the reasons set forth herein, the motion to strike TenPoint's supplemental invalidity contentions is **GRANTED IN PART**.

## I.    BACKGROUND

This case comes by way of the District of Nevada. There, Ravin filed its initial complaint on December 17, 2021. (Doc. No. 1 (Complaint).) In its complaint, Ravin alleged that TenPoint infringed six patents, comprising a total of 134 claims. (*See generally id.*) On January 18, 2023, TenPoint filed both a motion to change venue (Doc. No. 17 (Motion to Change Venue)) and a motion to extend time to file a responsive pleading (Doc. No. 19 (Motion to Defer)). The motion

---

[1] The Court held a status conference on November 8, 2023. (*See* Minutes of Proceedings [non-document], 11/8/2023.) At the status conference Ravin orally moved to strike TenPoint's supplemental invalidity contentions. Both parties were directed to file briefs on the motion by November 10, 2023. (Doc. Nos. 139, 141.) Ravin again moved the Court to strike TenPoint's supplemental responses formally in its brief. (Doc. No 139, at 2.) Having been fully briefed, the motion to strike is now before the Court.

for extension did not mention the length and complexity of Ravin's complaint, but instead it sought time for the court to rule on the pending motion to change venue. (*See* Doc. No. 19.) The motion to extend was denied (Doc. No. 30 (Order), at 3[2]), and TenPoint filed its answer on April 14, 2022. (Doc. No. 31 (Answer).) On May 4, 2022, TenPoint filed its first amended answer to the complaint. (Doc. No. 32 (Amended Answer).) Ravin served infringement contentions asserting 103 claims on May 23, 2022, and a corrected set of preliminary infringement contentions on May 26, 2022. (Doc. No. 89-6 (Infringement Contentions); *see also* Doc. No. 139, at 4.)

After the initial pleadings, the parties submitted a proposed scheduling order. (Doc. No. 34 (Disputed Discovery Plan).) Despite their disagreements in other areas, the parties agreed to several modifications of the standard scheduling order, including replacement of the District of Nevada's Local Patent Rule 1-12 (*id.* at 6–7), which allowed amendments to contentions only for good cause. The parties, instead, proposed replacing Rule 1-12 with language similar to the Northern District of Ohio's Local Patent Rule 3.10, which provides in relevant part:

> The parties' disclosures and responses may be amended or supplemented without leave of court until the Final Contentions are due under L. P. R. 3.10(b)-(d); provided, however, that after submission of the exchange of claim terms under L. P. R. 4.1(c), additional claims in the patent(s) in suit may not be asserted without obtaining leave from the Court for good cause shown.

L.P.R. 3.10(a). They continued to disagree, however, about the timeline of the case. (*See generally* Doc. No. 34.) Where the District of Nevada's local rules required the defendant to file initial contentions within forty-five days of receiving the plaintiff's infringement contentions, TenPoint argued that "complexity of the case" and the number of patents at issue warranted 119 days to respond. (*Id.* at 5–6.) In contrast, Ravin argued forty-five days was

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

sufficient given the substantial overlap in technology, prior art, and history covered by the patents. (*Id.*)

The District of Nevada's scheduling order did not include either the jointly proposed language replacing Rule 1-12 or the extension requested by TenPoint. (*See* Doc. No. 36 (Scheduling Order).) The scheduling order did, however, allow for modification by stipulation of the parties. (*Id.* at 3.) TenPoint understood this language, coupled with the court's decision to leave the initial deadlines in effect, as a decision by the court to allow the parties to agree to amend their contentions until after the claim construction ruling. (*See* Doc. No. 141, at 3–4.) Ravin disputes this and, in fact, when Ravin sought to amend its initial infringement contentions on January 12, 2023, it did so only after seeking leave of the court. (*See generally* Doc. No. 63 (Motion for Leave).)

Nevertheless, apparently believing that such an agreement was in effect, TenPoint responded to Ravin's May 23 infringement contentions with a set of initial contentions challenging only 6 claims on anticipation or obviousness theories. (Doc. No. 139-1 (LPR 1-8 Contentions).) TenPoint's initial contentions reiterated its objections to the volume and complexity of the record and asserted that TenPoint "intends to supplement [its contentions] as its investigation progresses." (*Id.* at 2–3.) Specifically, TenPoint's initial contentions identified US Patent No. 20120125302 ("Stanziale I") as anticipating several claims. (Doc. No. 139-1, at 18.) For instance, Stanziale I describes a crossbow with increased energy storage capacity owing to a design where the pulleys wind the "end portions of the [] flexible element" through an "angular displacement[.]" (Stanziale I, at 2:40–49.) This angular displacement allows for greater rotation than is typically achieved using a planar cam (*Id.* at 8:3–6.)

3

Two weeks after receiving its initial contentions, Ravin sent a letter advising TenPoint that it had not agreed to modify the schedule to allow for supplemental contentions. (Doc. No. 139-2 (July 21, 2022 Letter).) In the meantime, the parties proceeded to brief for claim construction based on the parties' original contentions. (*See* Doc. Nos. 50 (Opening Brief), 56 (Response), 57 (Reply).) On December 21, 2022, with claim construction ongoing, TenPoint filed a petition for *inter partes* review before the Patent Trial and Appeal Board ("PTAB") challenging claim 1 of U.S. Patent No. 9,354,015, one of the six patents-in-suit in this case.. (Doc. No. 86 (Motion to Stay), at 4.) Once again, TenPoint identified Stanziale I in its petition for *inter partes* review. (Doc. No. 86-1 (Petition for *Inter Partes* Review), at 28–36.) There, TenPoint alleged that Stanziale I anticipated claim 1 of the '015 patent, which is no longer at issue in this case. (*Id.*) The bulk of TenPoint's analysis is devoted to arguing that Stanziale I had anticipated the helical design of the cams in the patents-in-suit. (*See id.* at 31–33.)

Shortly thereafter, the case was transferred to the Northern District of Ohio. (Doc. No. 74 (Order Granting Motion to Change Venue).) Upon arrival in Ohio, TenPoint filed a motion to stay the case pending review by PTAB. (Doc. No. 86, at 4.) Ravin opposed the motion to stay, arguing that it was unfairly prejudiced by further delays in an already long-running case. (*See* Doc. No. 88 (Opposition to Stay), at 5–9.) While the motion to stay was pending before the Court, PTAB granted TenPoint's petition for *inter partes* review. (Doc. No. 97 (Notice of *Inter Partes* Review).) TenPoint notified the Court of the institution of *inter partes* review on July 12, 2023. (*Id.*) Ravin then reached out to TenPoint to discuss an agreement in which Ravin would voluntarily streamline its claims in exchange for TenPoint withdrawing its motion to stay. (Doc. No. 98-1 (July 13 Email), at 2–3.) In its July 14, 2023, response to TenPoint's notice of *inter partes* review, Ravin

represented that it was "prepared to make a meaningful reduction in the number of asserted claims," including dropping claim 1 of the '015 patent. (Doc. No. 98 (Response to Notice), at 1–2.) The Court then denied TenPoint's motion to stay the case. (Doc. No. 100 (Order on Motion to Stay).) On September 1, 2023, Ravin reduced the number of asserted infringement claims from 103 to 37, dropping all claims related to the '015 patent. (Doc. No. 107 (Notice of Reduction), at 1.) This reduction was accompanied by a covenant not to sue on the dropped claims. (Doc. No. 141 (TenPoint's Brief), at 10.)

The parties briefed for claim construction, which was set for hearing on November 15, 2023. (Doc. No. 106 (Case Management Plan).) On October 12, 2023, thirteen days after the parties finished briefing claim construction, and over fifteen months after filing its initial contentions, TenPoint served Ravin with supplemental contentions. (Doc. No. 139-1). These contentions introduced thirty-three new invalidity claims under anticipation or obviousness theories, and new allegations of inequitable conduct. (*Id.*) Of the thirty-three new claims, twenty-four were based, at least in part, on Stanziale I. (Doc. No. 141-1, at 3.) The remainder referenced prior art that had not been part of the initial contentions. (*Id.* at 2–5.)

Ravin filed a notice of discovery dispute on November 3, 2023, requesting the Court's assistance in getting TenPoint to withdraw the supplemental contentions. (Doc. No. 137 (Notice of Discovery Dispute).) The Court conducted a status conference on November 8, 2023. (Minutes of Proceedings [non-document], 11/8/2023.) The claim construction hearing was moved to November 21, 2023, and the parties were directed to file simultaneous briefs on the issue by November 10, 2023. (*Id.*; *see also* Order [non-document], 11/9/2023.)

## II.    DISCUSSION

The Northern District of Ohio's Local Patent Rules outline the procedures for serving and modifying invalidity contentions. The Northern District of Ohio's Local Patent Rules, unlike those in some other districts, permit amending or supplementing contentions and responses without leave or showing of good cause until final contentions are due. L.P.R. 3.10(a). Final infringement contentions, by rule, are due within fifteen days of the Court's claim construction ruling. L.P.R. 3.1(b). The Local Rules, therefore, clearly contemplate a scenario in which a party may amend its contentions at some point after the claim construction briefing.

That scenario, however, is necessarily limited. For example, a late amendment may be permissible where a party seeks to "refine [its] infringement theories in order to conform to the *Markman* ruling." *Fast Felt Corp. v. Owens Corning Roofing & Asphalt, LLC*, No. 3:14-cv-803, 2017 WL 4876789, at *1 (N.D. Ohio July 26, 2017). But the parties may not use the Local Rules simply to "spring entirely new theories that potentially disrupt the case schedule." *Id.* This is, in part, because "local rules may not displace the Federal Rules of Civil Procedure." *Wilson v. City of Zanesville*, 954 F.2d 349, 352 (6th Cir. 1992) (citation omitted). The Local Patent Rules provide as much: Rule 3.10 instructs that all contentions are to be given the same binding effect as an interrogatory made under Federal Rule 33. L.P.R. 3.10(a). Thus, in addition to conveying the allegations and positions of either side, "[t]he contentions also act as interrogatories designed to streamline the discovery process." *Datatrak Int'l, Inc. v. Medidata Sols., Inc.*, No. 1:11-cv-458, 2015 WL 12734894, at *3 (N.D. Ohio July 10, 2015).

As a form of interrogatory, contentions in a patent case are governed by Rule 26 of the Federal Rules of Civil Procedure. *See SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 754–

6

55 (E.D. Mich. 2008). Federal Civil Rule 26 requires the producing party to amend any disclosure "if it learns in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). Amendments must be made in a "timely manner" unless the information has "otherwise been made known" to the requesting party during the course of discovery. *Id.* A party that fails to amend its disclosure is subject to sanctions under Federal Civil Rule 37. Fed. R. Civ. P. 37(c)(1). Sanctions under Rule 37 are mandatory unless the party subject to sanctions can show that the failure to disclose was "harmless or is substantially justified." *Vance ex rel. Hammons v. United States*, 182 F.3d 920 (Table), 1999 WL 455435, at *3 (6th Cir. 1999).

### A.  Timeliness of Disclosures.

What makes a disclosure "timely" is ill-defined. The most recent Sixth Circuit case to speak on the subject articulated several possible tests, mostly concerned with when the disclosing party knew or should have known about the information, whether the time for discovery has passed, and if there were signs of gamesmanship in the disclosure. *See Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 n.7 (6th Cir. 2019). For example, the court in *EEOC v. Dolgencorp*, found that application of Rule 37 was inappropriate where "the party supplemented a disclosure or response within thirty-days of receiving the new information and did so before the close of discovery." 196 F. Supp. 3d 783, 795–96 (E.D. Tenn. 2016). Other courts have taken more restrictive stances on untimely disclosures. *See, e.g.*, *Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*, No. C13-1763, 2015 WL 1263339, at *3 (W.D. Wash. Mar. 18, 2015) (excluding evidence that could have been produced in initial disclosure if the disclosing party had conducted a "reasonable search"); *Dayton Valley Investors, LLC v. Union Pacific R.R. Co.*, No. 2:08-cv-127, 2010 WL 3829219, at *3 (D. Nev. Sept. 24, 2010) (information is not timely disclosed where it is simply

"available" to the producing party at an earlier stage). "Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case." *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428–29 (6th Cir. 1996). These varying approaches highlight the district courts' attempts to find the line between harmless mistakes and deceptive gamesmanship. *Bisig*, 940 F.3d at 219–20.

The court in *SPX* found the defendant exhibited the type of gamesmanship sufficient to warrant sanctions where it sought to supplement boiler-plate contentions with newly disclosed invalidity contentions and prior art. 574 F. Supp. 2d at 756. In that case, the defendant submitted only bare assertions of invalidity in its original contentions. *Id.* at 750. The plaintiff responded with a motion to compel more complete responses. *Id.* But it was not until the defendant disclosed its expert reports that the plaintiff learned about new invalidity claims and prior art supporting them. *Id.* at 751. Applying Federal Civil Rule 26, the court found that the defendant's disclosure was not timely because defense counsel "was in possession of this information for about a year" prior to its disclosure. *Id.* at 755. The defendant's only explanation for not turning over the contention was the "rather fantastic claim" that the defendant required almost a year to determine its invalidity position. *Id.* at 756. As a result, the court found that the defendant's late supplementary contentions were properly excluded under Rule 37. *Id.* at 757.

TenPoint's disclosure is similarly untimely. First, the fact that TenPoint's late amendments are theoretically permissible under the Northern District of Ohio's Local Patent Rules does not make them timely under Federal Civil Rule 26. *See Fast Felt Corp.*, 2017 WL 4876789, at *1.  As explained above, the availability of late supplements under the Local Patent Rules is intended to

allow parties to refine their positions in response to changes that occur during claim construction. *Id.* The Local Patent Rules do not license gamesmanship and they are not intended to allow parties to "spring entirely new theories that potentially disrupt the case schedule." *Id.*

While TenPoint may have supplemented its invalidity contentions prior to the close of discovery, it did so fifteen months after informing Ravin that it "intends to supplement" the original contentions. Over the course of those fifteen months, the parties: (1) briefed claim construction issues twice (Doc. No. 139, at 6), (2) they engaged in numerous discovery disputes (Doc. Nos. 111 (Letter Re: Discovery Dispute), 137), and (3) they briefed for *inter partes* review (*see* Doc. No. 97-1 (PTAB Institution Decision)). All the while, TenPoint maintains the "fantastic claim" that it took over 15 months to determine its true invalidity positions. (Doc. No. 141, at 4.) As with the defendant in *SPX*, TenPoint's claim that it could simply sit back and wait over a year to supplement contentions that it knew to be incomplete defies common sense. Even under the relatively lax timeliness standard articulated in *Dolgencorp*, the late disclosure of information was only permissible because it occurred before discovery *and* because the parties turned over the information within thirty days of learning about it. 196 F. Supp. 3d at 795. Here, TenPoint knew its responses were incomplete for over fifteen months. Its decision to wait to finalize its contentions until claim construction was fully briefed and it received a covenant not to sue from Ravin is indicative of the exact type of gamesmanship that Rule 26 seeks to prevent.

That Ravin may have been aware of the prior art cited by TenPoint does not alleviate TenPoint's obligation to timely disclose the prior art as part of its invalidity contentions. Rule 26 requires the producing party to timely correct disclosures if the "corrective information has not otherwise been made known" to the party seeking discovery. Fed. R. Civ. P. 26(e)(1)(A). Courts

in the Sixth Circuit have found that evidence is "made known" to the requesting party when, for example, a previously undisclosed witness is identified during the taking of a deposition. *See, e.g.*, *Sjostrand v. Ohio State Univ.*, No. 2:11-cv-462, 2014 WL 4417767, at *2 (S.D. Ohio Sept. 8, 2014) ("I read the ['made known' exception] to mean that if deposition testimony or response to written discovery is the functional equivalent of a 26(a)(1) disclosure, then there is no duty to supplement."); *see also SPX*, 574 F. Supp. 2d at 756 (striking defendant's supplemental prior art even though it was disclosed through expert depositions because "defense counsel was in possession of this information for about a year" before the deposition).

Invalidity contentions, unlike a fact witness, serve dual functions. *Datatrak Int'l, Inc.*, 2015 WL 12734894, at *3. They "act as interrogatories" in the context of discovery, but they also serve as notice of both parties' positions on infringement. *Id.* In this case, Ravin did not receive notice of TenPoint's actual invalidity positions until well over a year after TenPoint knew it had submitted deficient responses. Mere knowledge of prior art on the part of Ravin does not provide an "explanation of why the prior art renders the asserted claim obvious," nor does it provide a "chart identifying specifically where each limitation of each asserted claims are found" as required by the Local Rules. L.P.R. 3.5. A proper disclosure under L.P.R. 3.5 would have included these elements. Given these requirements, any knowledge Ravin had of the prior art cannot be the "functional equivalent" of a proper disclosure, and TenPoint's disclosures are untimely as a result.

## B.  Harmless or Substantially Justified.

Having determined that TenPoint's supplemental contentions are not timely, the Court must next decide whether its failure to disclose is "substantially justified or is harmless." *See Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quotation marks omitted).  The Sixth Circuit uses a five-factor balancing test to determine whether the failure to disclose was "substantially justified or is harmless" under Federal Rule 37(c)(1). These factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). "[The] Advisory Committee Notes to [the] 1993 Amendments (including Rule 37(c)(1)). . . . strongly suggest[] that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance*, 1999 WL 455435, at *5. The factors are not applied "rigidly," but are used as tools to separate "'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig*, 940 F.3d at 219 (quoting *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)).

Here, it is helpful to divide the late disclosures into three camps: those invoking previously undisclosed prior art, those based on Stanziale I, and new claims alleging inequitable conduct. Claims based on previously undisclosed prior are found in Sections III.C. through III.M. of TenPoint's supplemental disclosures. (Doc. No. 141-1, at 3–8.) The Stanziale I claims are those identified in section III.A. (*Id.* at 3.) Inequitable conduct claims are found in Section VI. (*Id.* at 9–16.) The Court will address each set of supplemental claims in turn.

11

1. *Undisclosed Prior Art Claims*

The claims found in Sections III.C. through III.M. of TenPoint's supplemental contentions are neither harmless nor substantially justified. Factor one of the *Howe* analysis considers surprise to the non-disclosing party. As to these claims, which are based upon previously undisclosed art, the surprise is high. Courts throughout the circuit have found this element weighs in favor of granting a motion to strike where one party is late to disclose information unknown to the other. *See, e.g.*, *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 468–69 (6th Cir. 2019). This is especially so where discovery "has been a massive, multi-year undertaking." *Clark v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:17-cv-419, 2023 WL 2316205, at *8 (W.D. Ky. Mar. 1, 2023). Surprise may be alleviated where the requesting party has access to relevant information, but this is not always the case. For example, the court in *EQT* found that there was adequate evidence of surprise when the plaintiff delayed turning over data relevant to damages calculation even though the defendant had access to the same data in its files. *EQT Prod. Co.*, 768 F. App'x at 468–69. While the defendant in that case may have had access to the data, it was not "aware of how [the plaintiff] processed the raw data, which of the changes . . . [the plaintiff] took issue with," or how the plaintiff used its software to calculate damages, until after taking depositions. *Id.* Late disclosure thus deprived the defendant of the "meaningful opportunity" to develop discovery. *Id.* at 469.

TenPoint now argues there is no real surprise because Ravin knew of at least some of the undisclosed prior art before receiving its supplemental contentions. (Doc. No. 141, at 9.) But, as discussed above, Ravin did not receive an explanation of how this prior art fit into TenPoint's invalidity contentions as it would have under a proper disclosure pursuant to L.P.R. 3.5.  Therefore,

Ravin did not have full notice of how the prior art might affect the upcoming claim construction until October 12, 2023. As with the plaintiff in *EQT*, Ravin's bare knowledge of the prior art does not provide a "meaningful opportunity" to engage in discovery absent the information clarifying TenPoint's invalidity position that would have been found in a proper disclosure under L.PR. 3.5. Factor one weighs against a finding that the failure to disclose was substantially justified or harmless as to the claims based on undisclosed prior art.

Factor two and three also weigh against admitting new claims based on undisclosed prior art. Factor two evaluates the non-disclosing party's ability to cure surprise. Factor three asks whether the late disclosures risk potential disruptions to trial. Late disruptions to critical motions are disfavored because they often force the requesting party "to bear the effort and expense necessary to cure [the disclosing party's] failure to disclose." *EQT Prod. Comp.*, 768 F. App'x at 469. Permitting this inequitable burden "reward[s] [the disclosing party] for its untimeliness and does nothing to deter similar conduct from future litigants." *Id.* Ravin has streamlined its claims, signing a covenant not to sue that it maintains was predicated on TenPoint's original set of contentions. At least as to the claims based on undisclosed prior art, TenPoint's offer to release Ravin from its covenant not to sue does little to lessen either Ravin's burden to cure or the potential disruptions to the tentative trial date that such late-added claims present. Allowing in new prior art would likely necessitate a new round of claim construction briefing. (*See* Doc. No. 139, at 6.) Additional claim construction briefing risks further delaying the case, which has been pending since December 17, 2021, and jeopardizing the tentative trial date. Indeed, Ravin has previously argued that it is prejudiced by further delays on multiple occasions. (*Id.* at 9–10; *see also* Doc. No. 88 (Opposition to Stay), at 5–9.) Allowing claims based on new prior art would only heighten that

prejudice, and it would place an "inequitable burden" on Ravin to revise its positions in response to the late disclosure. Factors two and three weigh against a finding that the failure to disclose the claims in Section III.C. through III.M. was substantially justified or harmless.

Factor four considers the importance of the evidence. Both parties indicate that the evidence is important in their briefs. (Doc. No. 139, at 6; Doc. No. 141, at 11.) But "[t]he importance of the evidence . . . 'can cut both ways.'" *Presidio, Inc. v. People Driven Tech., Inc.*, No. 2:21-cv-05779, 2023 WL 5162657, at *4 (S.D. Ohio Aug. 11, 2023) (quoting *Bisig*, 940 F.3d at 220). That is to say, "[t]he more important the proof, the greater effect the preclusion, but also the greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220 (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017)). While the supplemental contentions in this case may be important to TenPoint's position, that importance does not excuse TenPoint's lack of diligence, or the harm Ravin would suffer in inserting a range of invalidity claims based on undisclosed prior art at this late stage. Even allowing that TenPoint's untimely supplement is important to its positions, the prejudice to Ravin that would result from such an untimely disclosure makes the fourth factor neutral.

Finally, factor five looks to "the nondisclosing party's explanation for its failure to disclose the evidence[.]" *Howe*, 801 F.3d at 748. This factor weighs against a finding that the failure to disclose was substantially justified or harmless. TenPoint provides two justifications for its late disclosures. First, TenPoint argues that it was under the impression that the parties agreed to allow supplemental disclosures. (Doc. No. 141, at 4.) This explanation is belied by the fact that Ravin sent TenPoint a letter shortly after receiving the initial invalidity contentions in which Ravin both pointed to perceived deficiencies in the contentions and clearly stated that it did not agree to allow

14

TenPoint to supplement the contentions. (*See generally* Doc. No. 139-2.) Second, TenPoint argues that the complexity of the case, coupled with the large record, should excuse its failure to timely disclose complete invalidity contentions. While the record in this case may be substantial, that does not excuse the requirement that parties exercise due diligence in preparing discovery. *See Corder v. Ethicon, Inc.*, No. 6:19-cv-273, 2020 WL 13616867, at *4 (E.D. Ky. Nov. 6, 2020) ("Embedded in [factor five] is the requirement of due diligence."); *Auto Club Grp. Ins. Co. v. Omega Flex*, Inc., No. 16-cv-12227, 2017 WL 3263355, at *3 (E.D. Mich. Aug. 1, 2017) (striking late disclosures because the plaintiff "had years to investigate the fire and prepare expert opinions"). The parties in this case had over fifteen months to examine the record and refine their positions. That TenPoint waited until the eve of claim construction certainly suggests a lack of diligence, if not gamesmanship, in preparing and presenting its contentions.

Four out of five factors weigh in favor of striking the claims based on undisclosed prior art found in Sections III.C. through III.M. Accordingly, Ravin's motion to strike the claims in Sections III.C. through III. M. is granted.

### 2. *Stanziale I Claims*

Unlike those based on new prior art, TenPoint's contentions based on Stanziale I are harmless. (Doc. No. 141-1, at 3.) First, Ravin should not have been surprised to see new claims based on Stanziale I. The defendants in *Presidio* could not demonstrate surprise when seventy-six new trade secrets were disclosed on the last day of discovery, eleven months after initial disclosures had been made. 2023 WL 5162657, at *3. The court determined that, while the disclosure was not timely, the surprise was minimal because "all the alleged trade secrets are based on documents produced by [the defendant]." *Id.* This was in contrast to cases in which there was

an "eleventh-hour disclosure of information to which [the defendant] had no knowledge or access." *Id.* Here, Ravin had access to relevant information explaining TenPoint's position with regards to Stanziale I. It had cited Stanziale I in its prosecution history. (Doc. No. 141, at 9.) And it had, on numerous occasions, been made aware that TenPoint believed Stanziale I anticipated the cam technology found throughout the patents-at-issue. (*See* Doc. No. 139-1, at 18; *see also* Doc. No. 86-1, at 28–36.) As such, factor one weighs in favor of denying the motion as to claims based on Stanziale I.

Ravin has had multiple opportunities to cure any surprise it did suffer as a result of the new Stanziale I claims. Ravin contends that adding the new contentions would necessitate a new round of claim construction that addresses the construction of "power cable take-up journal," "power cable journal," "wrap onto," and "displaced . . . away." (Doc. No. 139, at 6.) But central to the factor two inquiry is whether the moving party had prior opportunities to rectify the discovery issue. *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2022 WL 279857, at *9 (N.D. Ohio Jan. 31, 2022). Stanziale I disclosed a cam design with helical journals that store additional power. TenPoint's petition for *inter partes* review clearly set out its belief that Stanziale I anticipated the cam design disclosed in the patents-in-suit in this case. (Doc. No. 86-1, at 28–36.) Still, Ravin declined the chance to construct terms clearly related to the cam design, namely "power cable take-up journal" and "power cable journal(s)", that it now says may require additional construction. (*See* Doc. No. 126 (L.P.R. 4.5), at 2.) In fact, the parties submitted agreed upon constructions for the terms "power cable take-up journal" and "power cable journal(s)" that have since been adopted by the Court. (*Id*; *see also* Doc. No. 148 (Memorandum Opinion and Order), at 6.) The parties agreed to these constructions with knowledge that TenPoint alleged

16

invalidity based on Stanziale I in its initial contentions and at *inter partes* review. Factor two weighs in favor of denying the motion to strike as to the claims based on Stanziale I.

The Stanziale I claims do not risk substantial disruption to agreed upon tentative trial date in this long-pending case. Unlike the claims involving new prior art, it is unlikely that the contentions based purely on Stanziale I would result in significant delay at the claim construction stage because Ravin was already aware of TenPoint's general positions relative to Stanziale I. (*See* Doc. No. 139-1, at 18.) As explained above, the Stanziale I has been a part of the record since the outset of this case, and Ravin has had numerous opportunities to address its impact at claim construction. As such, there is little need for additional claim construction or further delays pertaining to Stanziale I. The court in *Stephenson* found that there was little risk of disrupting trial as the trial date was over 10 months out. 2022 WL 279857, at *9. This case is currently set for trial on October 28, 2024, and a final pre-trial conference is to be held on September 20, 2024. (Doc. No. 106 (Case Management Plan), at 6.) Beyond that, no dates have been set past the claim construction. Factor three weighs in favor of denying the motion to strike.

Once again, factor four can cut both ways. *See Presidio*, 2023 WL 5162657, at *4. In this case, Ravin suffers little prejudice in admitting new claims based on Stanziale I. Unlike the claims based on previously undisclosed art, the Stanziale I claims would not result in significant delay, surprise, or prejudice to Ravin. Additionally, Stanziale I has been central to TenPoint's positions since the early stages of this case, indicating its importance to the parties' positions. (Doc. No. 139-1, at 18.) There is a "strong preference for trials on the merits in federal courts" *Presidio*, 2023 WL 5162657, at *4. Given the strong preference for deciding issues on the merits, factor four weighs against granting the motion to strike as to the Stanziale I claims.

17

Factor five continues to weigh in favor of granting the motion to strike. Still, on balance, the Stanziale I claims are harmless. They present little surprise, and Ravin has had multiple opportunities to cure any surprise. Despite TenPoint's lackluster explanation for its late disclosure, the claims based on Stanziale I are important additions to the parties' contentions on the merits, and do not jeopardize the trial schedule. Accordingly, Ravin's motion to strike is denied as to the claims based on Stanziale I, found in Section III.A.

### 3. *Inequitable Conduct Claims*

TenPoint's supplemental invalidity contentions also contained allegations referencing a potential inequitable conduct counterclaim. (Doc. No. 141-1, at 9–16.) Inequitable conduct was never pled as a counterclaim in this case, though TenPoint has included references to inequitable conduct in its earlier contentions. (Doc. No. 139-1, at 35.) TenPoint inquired about amending its pleadings to add an inequitable conduct claim at the case management conference held on August 25, 2023. (Minutes of Proceedings [non-document], 8/25/2023.) At that time, the Court held that it would not allow the parties to amend their pleadings, further indicating that it did not believe TenPoint had sufficiently developed a potential inequitable conduct counterclaim. (Doc. No. 141, at 11.) Nothing has changed in the interim.

Claims of inequitable conduct are subject to Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). Rule 9(b) requires allegations of fraud to be "stated with particularity." *Id.* at 1326 (quoting Fed. R. Civ. P. 9(b)). This heightened standard requires a showing of the "particularized factual bases for the allegation. *Id.* at 1326–27; *see also King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (C.C.P.A. 1981) ("Rule 9(b) requires that the pleadings contain explicit rather than implied

18

expression of the circumstances constituting fraud."). While knowledge and intent may be averred generally, pleadings must include sufficient allegations from which the Court may infer that the specific individual (1) knew of the withheld information or the falsity of his material misrepresentation and, (2) that the individual withheld or misrepresented this information with the specific intent to deceive the United States Patent and Trademark Office ("USPTO"). *Exergen Corp.*, 575 F.3d at 1328–29.

The facts of *Exergen* prove a good guide. In *Exergen*, the defendant sought leave to amend its initial invalidity contentions to add inequitable conduct as an affirmative defense and counterclaim. *Id.* at 1317. The court denied the motion, finding that the proposed pleading failed to allege inequitable conduct with the requisite particularity. *Id.* The Federal Circuit upheld this ruling, holding that the defendant's general claims that the plaintiff "was aware" of prior art did not provide "factual basis to infer that any specific individual . . . knew of the specific [prior art.]" *Id.* at 1330. Continuing, the Federal Circuit found that "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Id.* (citation and emphasis omitted). Moreover, the fact that the defendant pled deceptive intent upon information and belief did not obviate the requirement that it plead "specific facts upon which the belief is reasonable based." *Id.* at 1330–31. This was despite the fact that the plaintiff had excluded relevant prior art from a patent prosecution after including it when prosecuting a prior patent. *Id.*

Here, TenPoint's supplemental responses, even if they appeared in a proper pleading, do not present sufficient factual allegations to support the inference that Ravin withheld information knowingly or with the specific intent to deceive the USPTO. TenPoint alleges that Karl Scwappach

19

("Schwappach"), the attorney who prosecuted the relevant patents on behalf of Ravin, misled the USPTO by "burying material references in a large pile of other marginally relevant references submitted to the USPTO examiner[.]" (Doc. No. 141-1, at 9.) To TenPoint, this "burial" shows an intent to have the USPTO overlook material references, thus violating Schwappach's duty of good faith and candor. (*Id.* at 10.) TenPoint further supports its theory of intent by alleging that Schwappach, as an experienced and successful patent attorney, "would not have cast aside his career [at a law firm] to join a 'speculative' start-up company" without conducting patentability searches that would have revealed invalidating prior art. (*Id.*)

These allegations are purely speculative. They convey what TenPoint believes a person in Schwappach's position "would" have done or should have identified. But the standard for scienter in pleading inequitable conduct requires facts that raise the inference of actual knowledge. *Exergen Corp.*, 575 F.3d at 1328–29. It is not enough to allege beliefs about what an individual likely would have done. And, even if TenPoint could show that Schwappach had actual knowledge that the prior art could be invalidating, it nevertheless fails to allege any facts that show deceptive intent. Like the plaintiff in *Exergen*, Ravin did not disclose some allegedly material references in early patents, but it did disclose them in others. (Doc. No. 141-1, at 14–17.) The court in *Exergen* found that an allegation that a material reference was simply withheld is insufficient because it does not "plausibly suggest any 'deliberate decision to withhold a known material reference[.]'" *Id.* TenPoint's allegations that Ravin withheld some disclosures, or "buried" others, does not plausibly suggest a deliberate decision either. TenPoint's inequitable conduct allegations fail as a result. Ravin's motion to strike is granted as to inequitable conduct claims found in section VI.

### III.    CONCLUSION

For all the reasons set forth herein, Ravin's motion to strike the supplemental invalidity contentions is **GRANTED IN PART**, as follows:

It is granted as to the undisclosed prior art (Sections III.C. through III.M.);

It is denied as to claims based on Stanziale I (Section III.A.); and

It is granted as to inequitable conduct claims (Section VI).

**IT IS SO ORDERED**.

Dated: March 6, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**