## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| RAVIN CROSSBOWS, LLC, | CASE NO. 5:23-CV-00598 |
| Plaintiff, | |
| | JUDGE SARA LIOI |
| vs. | |
| | MAGISTRATE JUDGE AMANDA M. KNAPP |
| HUNTER'S MANUFACTURING COMPANY, INC., | |
| | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Before the Court is Defendant Hunter's Manufacturing Company, Inc. d/b/a TenPoint Crossbow Technologies's ("TenPoint" or "Defendant") Motion to Compel Discovery.  (ECF Doc. 132 ("Motion").)  For the reasons set forth herein, Defendant's Motion (ECF Doc. 132) is **GRANTED in part and DENIED in part**.

## I.       Background

On September 12, 2023, the discovery dispute outlined in the September 8, 2023 Letter Re: Discovery Dispute Pursuant to Local Rule 37.1 filed by Defendant (ECF Doc. 111 ("Discovery Dispute")) was referred to the undersigned for resolution.  (ECF Doc. 113.) Plaintiff Ravin Crossbows, LLC ("Ravin" or "Plaintiff") filed a Letter in Response on September 12, 2023.  (ECF Doc. 112.)  The parties were unable to resolve the Discovery Dispute through informal means, including multiple meet-and-confers with counsel and telephone conferences with the undersigned.  (ECF Docs. 114, 119, 124, 127, 130.)  On October 17, 2023, the parties were ordered to file a joint status report clarifying what, if any, previously identified disputed discovery requests had been resolved and/or were still in progress by October 24, 2023;

1

Defendant was also permitted to file a motion to compel as to any disputed discovery requests that had not been resolved and/or were not still in progress by that same date (ECF Doc. 130). The parties timely filed a joint status report identifying disputed discovery requests that were resolved or still in progress (ECF Doc. 131) and Defendant timely filed a Motion to Compel (ECF Doc. 132). The Motion is fully briefed and ripe for review (ECF Doc. 134, 138, 151, 152).

## II. Defendant's Motion

TenPoint propounded 126 Requests for Production ("RFP") in its First Set of RFPs (ECF Doc. 119-4) and 106 Requests for Admission ("RFA") in its First Set of RFAs (ECF Doc. 119-6). Following the informal attempts to resolve the Discovery Dispute, Defendant's Motion identifies 139 disputed discovery requests, consisting of 37 disputed RFPs and 102 disputed RFAs for which Defendant seeks Court intervention.[1]  (ECF Doc. 134.)

In its Motion, Defendant seeks to compel discovery pursuant to Fed. R. Civ. P. 37(a) as to RFPs, asserting that Plaintiff's responses to RFP Nos. 4, 10, 12-14, 16, 20-21, 23, 25-26, 31-33, 35-50, 52, 59, 63, 65-66, 120, and 122 "are improper and do not comply with Ravin's duties under Rule 26(g)(1)(B) and Rule 34(b)(2). . . ."  (ECF Doc. 132, p. 2 (referencing ECF Doc. 119-5).)  Defendant also "seeks to determine the sufficiency of Ravin's responses under Rule 36(a)(6)" as to RFAs, asserting that Plaintiff's responses to Defendant's RFA Nos. 1-18, 20-93, 96-101, and 103-106 "are improper and do not comply with Ravin's duties under Rule 26(g)(1)(B) and Rule 36(a)."  (ECF Doc. 132, p. 13 (referencing ECF Doc. 119-7).)

---

[1] The parties identified disputes relating to TenPoint's First Set of Interrogatories in earlier filings with the Court (ECF Docs. 119, 129), but Defendant's Motion does not seek to compel interrogatory responses.

## III.    Analysis

### A.    General Discovery Standards

As a general matter, "the scope of discovery is within the sound discretion of the trial court." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). The Federal Rules of Civil Procedure generally permit a party to "obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." *See* Fed. R. Civ. P. 26(b)(1). "The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "However, district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).

"Although a plaintiff should not be denied access to information necessary to establish [its] claim, neither may a plaintiff be permitted 'to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Id.* (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)). If relevance is "not obvious on its face, the initial burden of showing that the information sought is discoverable, is on the proponent of a motion to compel." *Branning v. Romeo's Pizza, Inc.*, No. 1:19 CV 2092, 2021 WL 4202571, at *2 (N.D. Ohio Aug. 2, 2021); *see also Luxottica of Am. Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 1:20-CV-698, 2022 WL 1204870, at *1 (S.D. Ohio Apr. 22, 2022). "Once the information is shown to be discoverable, the burden shifts to the opponent of the motion to compel 'to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted.'" *Branning*, 2021 WL 4202571, at *2 (quoting

3

*Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (2010)).  "[A] party may move for an order compelling . . . discovery" under Fed. R. Civ. P. 37 after conferring or attempting in good faith with the party not providing the requested discovery in an effort to obtain the requested information without court involvement.  *See* Fed. R. Civ. P. 37(a)(1).

With these standards in mind, the undersigned turns first to Defendant's Motion as it relates to the RFPs and then to the Motion as it relates to the RFAs.

**B.    Defendant's Motion to Compel Responses to RFPs**

**1.    Legal Standard for RFPs Under Rule 34**

Federal Rule of Civil Procedure 34 permits a party to request that another party produce or permit inspection of:

> any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. . . .

*See* Fed. R. Civ. P. 34(a)(1)(A).  A party making a request under this Rule "must describe with reasonable particularity each item or category of items to be inspected. . . ."  *See* Fed. R. Civ. P. 34(b)(1)(A).  If a party objects to an RFP under Rule 34, the party must "state with specificity the grounds for objecting to the request, including the reasons."  *See* Fed. R. Civ. P. 34(b)(2)(B). Additionally, a party's "objection must state whether any responsive materials are being withheld on the basis of that objection" and "[a]n objection to part of a request must specify the part and permit inspection of the rest."  *See* Fed. R. Civ. P. 34(b)(2)(C).

**2.    Parties' Arguments Relating to RFPs**

The Defendant seeks to compel discovery pursuant to Fed. R. Civ. P. 37(a) as to RFP Nos. 4, 10, 12-14, 16, 20-21, 23, 25-26, 31-33, 35-50, 52, 59, 63, 65-66, 120, and 122.  (ECF

4

Doc. 132, p. 2.)  TenPoint contends that Ravin's responses to the identified RFPs are improper or insufficient under Rules 26 and 34 of the Federal Rules of Civil Procedure. (ECF Doc. 132, pp. 2-13; ECF Doc. 138, pp. 3-5.)  It asserts that Ravin's "General Objections" on various grounds are "boilerplate" objections that are improper and "tantamount" to no objection, and argues the Court should find those "General Objections" forfeited and removed.[2]  (ECF Doc. 132, p. 2 (referring to ECF Docs. 119-5, pp. 3-6, 119-7, pp. 3-5, 123, pp. 3-6, and 123-1, pp. 2-5.) TenPoint more directly challenges Ravin's objections based on privilege or immunity (ECF Doc. 132, pp. 2-3), relevance (*id.* at pp. 3-9), vagueness/ambiguity (*id.* at pp. 9-10), the Order Regarding Electronically Stored Information ("ESI Order") (*id.* at pp. 10-11), undue burden (*id.* at p. 11), information being equally available (*id.*), lack of possession, custody, or control (*id.*), confidentiality (*id.* at pp. 11-12), and that the requests call for legal conclusions (*id.* at p. 12). TenPoint also argues that Ravin's responses are nonresponsive or improper in those instances where Ravin asserted objections but then stated that it would produce "relevant, non-privileged documents" to the extent they exist, without indicating whether any documents were in fact being withheld based on the stated objections.  (*Id.* at pp. 12-13.)

In opposition, Ravin sets forth general reasons why the Court should deny TenPoint's motion to compel further responses to the RFPs.  First, Ravin asserts that "discovery is not a fishing expedition" and argues that TenPoint's relevance challenges should be rejected because TenPoint seeks to discover information that is not relevant to issues in the case.  (ECF Doc. 134, p. 2.)  Second, Ravin argues that as to most of the disputed RFPs, "Ravin has made clear that there are no non-privileged responsive documents, e.g., RFP Nos. 4, 13, 14, 16, 26, 35-45, 49-50,

---

[2] TenPoint's request that the Court order Ravin's general objections forfeited or removed because they are too generalized and are tantamount to no objection is not well-taken. Ravin set forth general objections, but it also provided specific objections to the disputed discovery.  Accordingly, TenPoint's request to order Ravin's general objections forfeited or removed is **DENIED**.

65, and 66, or that all non-privileged responsive documents have already been produced, e.g.,
RFP Nos. 10, 12, 20, 31-33, 36-37, and 46-47." (*Id.*)  Third, Ravin argues that the Motion lacks
"supporting legal authority."  (*Id.*)  Fourth, Ravin asserts that the disputes as to RFPs 21, 23, 25,
and 52 were not "joined" or identified as disputed requests and therefore TenPoint's request for
relief as to those requests is premature, and also asserts that "Ravin's counsel previously
confirmed by letter to TenPoint's counsel" that its responses to RFPs 21, 23, 25, and 52 were not
objectionable.  (*Id.* at pp. 2-3.)

Following its general reasons as to why the Motion should be denied, Ravin provides
arguments directed at specific RFPs.  (*Id.* at pp. 3-12.)  Additionally, Ravin argues: that its
"objections while proper, are not the bases for Ravin withholding documents unless so stated –
for example, in instances where Ravin lacks possession, custody, or control of the sought after
information or in the context of privilege"; that Ravin "has not withheld any documents based on
'vague/ambiguous,' 'equally-available,' 'confidentiality,' and 'legal conclusion' objections as is
plain from Ravin's discovery responses"; and that TenPoint's complaints "do nothing to change
the fact that Ravin does not have documents to produce in response to many of TenPoint's RFPs,
which exclude email requests."  (*Id.* at p. 13.)  Finally, Ravin asserts that "any responsive
document withheld as privileged is detailed in Ravin's privilege log."  (*Id.*)

The parties' disputes as to the RFPs can be grouped into four general categories.  First,
Plaintiff asserts there is a group of RFPs for which it has confirmed there are no non-privileged
responsive documents (Group 1).  (ECF Doc. 134, p. 2, 13).  Second, Plaintiff asserts there is a
group of RFPs for which it has confirmed that it has already produced all non-privileged
responsive documents (Group 2).  (*Id.* at pp. 13-14.)  Third, Plaintiff asserts that Defendant is
prematurely seeking relief in its Motion as to a group of RFPs, but continues to assert objections

to those requests (Group 3).  (*Id*. at pp. 2, 4-5, 9-10.)  Fourth, there is a group of RFPs that

Plaintiff continues to assert objections to (Group 4).  (*Id*. at pp. 3, 5-9, 10-12.)

### 3.    Disputes Regarding Production of Email Attachments and Ravin's Assertion of Privilege and Privilege Log

Before addressing the four groups of disputed RFPs, the undersigned will first address

two broader issues of disagreement between the parties, relating to the production of email

attachments and Ravin's assertion of attorney-client privilege with the use of a privilege log.

The ESI Order stipulated to by the parties and entered by the Court on June 23, 2022 (ECF Doc.

44) is summarized to provide context.

### i.    ESI Order

The ESI Order "supplements all other discovery rules and orders. It streamlines

Electronically Stored Information ("ESI") production to promote a 'just, speedy, and inexpensive

determination of this action, as required by Federal Rule of Civil Procedure 1.'"  (*Id*. at p. 2, ¶ 1.)

Under the ESI Order, "[c]osts may be shifted for disproportionate ESI production requests

pursuant to Federal Rule of Civil Procedure 26.  Likewise, a party's nonresponsive or dilatory

discovery tactics are cost-shifting considerations."  (*Id*. at p. 2, ¶ 3.)

"General ESI production requests under Federal Rules of Civil Procedure 34 . . . shall not

include email or other forms of electronic correspondence (collectively "email").  To obtain

email parties must propound specific email production requests."  (ECF Doc. 44, p. 3, ¶ 6.

(emphasis added).)   "Email production requests shall only be propounded for specific issues,

rather than general discovery of a product or business."  (*Id*. at p. 3, ¶ 7.)   The ESI Order

specifies how many custodians each party may request email production from—a total of five—

and the number of search terms permitted for each custodian—a total of ten.  (*Id*. at p. 3, ¶¶ 10-

11.)  The parties, however, maintain the ability to jointly agree to modify these limits without

leave of Court. (*Id*.) Additionally, the parties "shall cooperate to identify the proper custodians, proper search terms and proper timeframe" for email production requests (*id*. at p. 3, ¶ 9) and "[t]he search terms shall be narrowly tailored to particular issues" (*id*. at p. 3, ¶ 11).

The ESI Order also addresses privilege logs in the context of ESI. (ECF Doc. 44, p. 6, ¶ 17.) Specifically, the ESI Order states:

> 17. <u>Privilege Logs</u>. Each party shall use good-faith efforts in determining the reasonable technology and processes to identify and log ESI containing information protected by the attorney-client privilege or the work-product doctrine (collectively, "Protected").
>
> a. No party is required to list on a privilege log Protected information generated on or after December 17, 2021, absent a showing of good cause.
>
> b. If a producing party identifies portions of ESI that are Protected and redacts such portions on that basis, the producing party must log the redaction.
>
> c. For each Protected email chain, the producing party will identify it as such and provide the required privilege-log information for the top (i.e., most recent) email in the email chain. An "email chain" as used in this paragraph means a single file that contains multiple emails sequentially in the body of the file (e.g., forwards or replies). If one Protected email chain is subsumed within another, larger Protected email chain, both email chains will be logged. This section does not relieve a party from producing any non-Protected emails within a Protected email chain.

(*Id*.)

### ii. Dispute Regarding Production of Attachments to Emails

The parties agree that the ESI Order excludes email production from general ESI requests under Rule 34. (ECF Doc. 132, p. 10; ECF Doc. 134, pp. 3; ECF Doc. 134-1, p. 5.) However, they disagree as to whether or how the ESI Order impacts production of attachments to emails. Ravin has asserted in response to certain RFP requests that its responses were made with the understanding that the RFP requests "exclude emails and their attachments." (ECF Doc. 134, pp. 3, 8, 9-10.) TenPoint argues that attachments to emails are not excluded from general ESI

8

production simply because they were attached to an email.  (ECF Doc. 132, p. 10; ECF Doc. 138, p. 4.)  More specifically, it contends an email attachment must be produced, even without a specific request for production of emails, if the attachment was also saved to a local hard drive or network server.  (ECF Doc. 132, p. 10.)   Thus, it asks that Ravin be ordered to "revise its responses to remove the email objections and . . . produce any attachments unless they fall into the narrow exception of being available only within electronic correspondence."  (*Id*. at p. 11.)

Having considered the parties arguments on this issue, the undersigned finds some clarification would be helpful.  Pursuant to the ESI Order, Ravin had no obligation to search for, or produce, any electronic correspondence—including attachments—that may be responsive to the RFPs at issue here.  Any finding to the contrary would be unduly burdensome and would allow TenPoint to do an end-run around the email production protocol stipulated to by the parties.  However, to the extent that a responsive document has been identified by Ravin without the benefit of an electronic correspondence search, and was located or discovered outside the context of electronic correspondence and related attachments, the mere fact that such document was also attached to an email at some point would not, and does not, excuse Ravin from producing the document.  To the extent that any supplemental responses are needed in light of these clarifications, the undersigned provides further instructions below.

### iii.    Ravin's Assertion of Attorney-Client Privilege and Privilege Log

TenPoint also contends that Ravin's objections to TenPoint's RFPs and RFAs based on claims of attorney-client privilege are improper because Ravin does not describe the materials protected by the privilege, as required by Fed. R. Civ. P. 26(b)(5)(A)(iii), in a way that allows TenPoint to assess the asserted privilege.  (ECF Doc. 132, pp. 2-3, 14; ECF Doc. 138, pp. 2-3.)  In support of its contention that Ravin's privilege objections are deficient, TenPoint notes that

Ravin's privilege log "has a paltry three entries."[3]  (ECF Doc. 132, p. 3.)  TenPoint therefore requests that the Court order that "all materials encompassed by the requests but not listed on the privilege log have forfeited any such claims of privilege."  (*Id.*)  In response, Ravin asserts that "to date, any responsive document withheld as privileged is detailed in Ravin's privilege log" and "TenPoint has not levied any complaints about the sufficiency of Ravin's narrative relating to the same." (ECF Doc. 134, p. 13.)  It further argues that "to prevent any waiver of objections, Ravin timely objected to TenPoint's discovery requests and complied, as well as continues to comply, with its obligations under the Federal Rules of Civil Procedure."  (*Id.* at p. 14.)

Although TenPoint notes that Ravin's privilege log to date includes only three entries, it has not cited authority indicating that the mere length of a privilege log is dispositive as to whether a party has complied with its discovery obligations.  Here, as discussed above, Ravin had no obligation to produce, and thus no obligation to list in its privilege log, any privileged electronic communications governed by the ESI Order.  Further, the parties have stipulated that they are not "required to list on a privilege log Protected information generated on or after December 17, 2021, absent a showing of good cause." (ECF Doc. 44, p. 6, ¶ 17.)  Thus, TenPoint's arguments rely on an unsubstantiated assumption that Ravin is in possession of a larger number of responsive privileged communications which predate December 17, 2021, and are not electronic communications governed by the ESI Order.

Having considered the parties' arguments, the undersigned finds that Ravin properly preserved objections based on attorney-client privilege as to: (1) documents identified on its privilege log; (2) information that is privileged but was generated after December 17, 2021; and (3) information that has not been discovered, identified, or produced because there has been no email production request made pursuant to the ESI Order.  Given the lack of any information

---

[3] The privilege log has not been supplied to the Court.

suggesting Ravin actually withheld additional privileged materials not encompassed by the categories above, TenPoint's request for an order that "all materials encompassed by the requests but not listed on the privilege log have forfeited any such claims of privilege" is **DENIED**.

    **4.**    **Group 1 - For Which Plaintiff Asserts There Are No Non-Privileged Responsive Documents (RFP Nos. 4, 13, 14, 16, 26, 35-45, 49-50, 65, and 66)**

As to Group 1, Plaintiff asserts that it "has made clear that there are no non-privileged responsive documents." (ECF Doc. 134, p. 2 (citing ECF Doc. 134-1, Sept. 20, 2023 letter from Plaintiff's counsel to Defendant's counsel).) Therefore, Plaintiff argues that any complaints regarding its objections to those RFPs "do nothing to change the fact that Ravin does not have documents to produce in response to many of TenPoint's RFPs, which exclude email requests" (ECF Doc. 134, p. 13) and attachments to emails (*id.* at p. 3). TenPoint argues that Ravin's position in this regard is a "concession that it asserted objections but did not really intend to stand on them (to withhold discovery)" and causes confusion regarding what documents were withheld based on what objection in contravention of Rule 34(b)(2)(C). (ECF Doc. 132, p. 13; ECF Doc. 138, p. 2.) TenPoint requests that "rather than hiding behind phantom objections that render unclear if any discovery is actually being withheld, Ravin be required to remove all such waived, forfeited, and otherwise meritless [objections]." (ECF Doc. 138, p. 2.)

    **i.**    **RFP Nos. 4, 13, 14, 26, 35, 38, 40-45, 49-50, and 66**

Ravin has stated on more than one occasion that it has located no non-privileged documents responsive to RFP Nos. 4, 13, 14, 26, 35, 38, 40-45, 49-50, and 66. (ECF Doc. 134, p. 2; ECF Doc. 134-1, p. 5.) Ravin has further clarified that its responses exclude emails and their attachments, since no email discovery requests were propounded, and do not include privileged information generated on or after December 17, 2021. (*Id.*) Although Ravin initially asserted other objections to these RFPs, the undersigned finds that, to the extent that Ravin has withheld

11

documents responsive to these requests, it has done so because it asserts the responsive

documents are privileged, not based on other objections.

To ensure no ambiguity and no further misunderstanding between the parties, the Court

orders that Ravin take the following actions within two weeks of this Order:

- Ravin shall supplement its responses to RFP Nos. 4, 13, 14, 26, 35, 38, 40-45, 49-50, and 66 to identify all RFPs for which it has identified and withheld responsive privileged documents, excluding email communications and privileged information generated on or after December 17, 2021;

- To the extent Ravin discovered non-privileged documents that are responsive to RFP Nos. 4, 13, 14, 26, 35, 38, 40-45, 49-50, and 66 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall produce those documents;

- To the extent Ravin discovered privileged documents that are responsive to RFP Nos. 4, 13, 14, 26, 35, 38, 40-45, 49-50, and 66 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall supplement its privilege log to list such documents.

Ravin and its counsel are not required to run email searches to comply with this Order.

### ii.    RFP Nos. 16, 36-37, 39, and 65

Ravin has also stated that it located no non-privileged documents responsive to RFP Nos.

16, 36-37, 39, and 65. (ECF Doc. 134, p. 2; ECF Doc. 134-1, p. 5.)  However, the undersigned

finds other statements and arguments presented by Ravin as to these five RFPs create

inconsistency or confusion that would benefit from clarification.  More particularly, although

Ravin identifies these five RFPs as requests for which it has located *no* non-privileged

responsive documents: (1) Ravin also asserts that it *has produced* documents that are responsive

to RFP Nos. 16 (ECF Doc. 134, p. 3) and RFP No. 39 (*id.* at p. 8); (2) Ravin also includes RFP

Nos. 36-37 in the list of RFPs for which it asserts *it has already produced* all non-privileged

documents (*id.* at p. 2); and (3) Ravin did not identify RFP No. 65 as a request for which no non-privileged documents were identified (ECF Doc. 134-1, p. 5) and its initial response to RFP No. 65 states instead that, "[u]nless and until narrowed, and/or the relevance explained, Ravin will not produce any documents in response" (ECF Doc. 119-5, p. 51).

In light of these inconsistencies, within two weeks of this Order, Ravin shall supplement its responses to RFP Nos. 16, 36-37, 39, and 65 to state whether it located non-privileged documents that are responsive to those RFCs and, if so, whether those documents have been produced.  In addition, to ensure no ambiguity or further misunderstanding between the parties, the Court orders that Ravin take the following actions within two weeks of this Order:

- Ravin shall supplement its responses to RFP Nos. 16, 36-37, 39, and 65 to identify all RFPs for which it has identified and withheld responsive privileged documents, excluding email communications and privileged information generated on or after December 17, 2021;

- To the extent Ravin discovered non-privileged documents that are responsive to RFP Nos. 16, 36-37, 39, and 65 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall produce those documents;

- To the extent Ravin discovered privileged documents that are responsive to RFP Nos. 16, 36-37, 39, and 65 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall supplement its privilege log to list such documents.

Ravin and its counsel are not required to run email searches to comply with this Order.

Given the foregoing, the Court finds it unnecessary to address TenPoint's more nuanced objections to RFP Nos. 4, 13, 14, 16, 26, 35-45, 49-50, 65, and 66 and expects that Ravin's supplemental responses to these RFPs will adequately address and resolve any ambiguity as to Ravin's responses based on privilege.  Accordingly, TenPoint's Motion is **GRANTED in part** as to RFP Nos. 4, 13, 14, 16, 26, 35-45, 49-50, 65, and 66.

5. **Group 2 - For Which Plaintiff Asserts All Non-Privileged Responsive Documents Have Already Been Produced (RFP Nos. 10, 12, 20, 31-33, 36-37, and 46-47)**

As to Group 2, Ravin has stated that all non-privileged documents responsive to RFP Nos. 10, 12, 20, 31-33, 36-37, and 46-47 have been produced.  (ECF Doc. 134, pp. 2, 6-7, 8; ECF Doc. 134-1, pp. 5-6.)

i. **RFP Nos. 36 and 37**

As discussed in Section III.B.4.ii., *supra*, there is confusion as to which group Ravin is asserting RFP Nos. 36-37 fall within and Ravin is ordered to supplement its RFP responses as to these two RFPs as set forth above within two weeks of this Order.

ii. **RFP Nos. 10, 12, 20, 31-33, and 46-47**

As to RFP Nos. 10, 12, 20, 31-33, and 46-47, Ravin has confirmed that it produced all non-privileged responsive documents, has provided further explanation as to those responses, and has adequately identified what responsive documents have been provided.  (ECF Doc. 134, pp. 2, 5-6, 7-8, 9; ECF Doc. 134-1, pp. 5-6, ECF Doc. 123; 123-1; ECF Doc. 136.)  TenPoint contends that Ravin appears to be saying that the documents it chose to produce are "good enough" without certifying that it complied with Rule 34 and produced all responsive documents to the requests or attempting to justify original objections.  (ECF Doc. 138, p. 3.)  Having reviewed the parties' arguments and relevant filings, the Court finds that Ravin has adequately and sufficiently responded to these RFP requests and requiring further responses as to these RFP requests from Ravin would be unduly burdensome and amount to a fishing expedition.

However, as discussed in connection with the Group 1 RFPs, to ensure no ambiguity and no further misunderstanding between the parties, the Court orders that Ravin take the following actions within two weeks of this Order:

- Ravin shall supplement its responses to RFP Nos. 10, 12, 20, 31-33, and 46-47 to identify all RFPs for which it has identified and withheld responsive privileged documents, excluding email communications and privileged information generated on or after December 17, 2021;

- To the extent Ravin discovered non-privileged documents that are responsive to RFP Nos. 10, 12, 20, 31-33, and 46-47 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall produce those documents;

- To the extent Ravin discovered privileged documents that are responsive to RFP Nos. 10, 12, 20, 31-33, and 46-47 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall supplement its privilege log to list such documents.

Ravin and its counsel are not required to run email searches to comply with this Order.

Given the foregoing, the Court finds it unnecessary to address TenPoint's more nuanced objections to RFP Nos. 10, 12, 20, 31-33, 36-37, and 46-47 and expects that Ravin's supplemental responses to these RFPs will adequately address and resolve any ambiguity as to Ravin's responses based on privilege.  Accordingly, TenPoint's Motion is **GRANTED in part** as to RFP Nos. 10, 12, 20, 31-33, 36-37, and 46-47.

**6.  Group 3 - For Which Plaintiff Asserts Defendant's Request for Relief is Premature (RFP Nos. 21, 23, 25, and 52)**

Ravin argues that TenPoint's request to compel responses to RFP Nos. 21, 23, 25, and 52 is premature and not ripe for this Court's review because TenPoint did not meaningfully raise these as disputed RFPs, and because Ravin's counsel confirmed by letter to TenPoint's counsel on September 20, 2023, that it understood TenPoint had no dispute with Ravin's production in response to these RFP requests.  (ECF Doc. 134, pp. 2-3, 4-5, 9-10; ECF Doc. 134-1, p. 7.) Defendant responds that the four RFPs were identified as still being in dispute during an October 12, 2023 meet and confer and therefore are properly included in its Motion.  (ECF Doc. 138, p.

15

5.)  Even though the four RFPs were not listed in the September 20, 2023 joint status report, Defendant argues that the Court should consider the requests and not insist on "rigid adherence to formalities."  (*Id.*)

Upon review of the filings in this matter, it is apparent that RFP Nos. 21, 23, 25, and 52 were not identified in the September 20, 2023 joint status report as being in dispute.  (ECF Doc. 119.)  Thus, TenPoint should not have included disputes as to these four RFP requests in its Motion because TenPoint was only provided the opportunity to proceed more formally with its motion to compel based on disputes identified in the September 20, 2023 joint status report (ECF Doc. 119).  (ECF Doc. 130.)  However, TenPoint's Motion as to RFP Nos. 21, 23, 25, and 52 will not be denied based on this technicality because review of the filings in this matter also reveals that the four RFPs were the subject of meet and confers that occurred in connection with the discovery dispute that the Court was working to informally narrow and resolve through mutual agreement of the parties.[4]  (ECF Doc. 129, p. 4).  Accordingly, the undersigned turns to the parties' substantive arguments as to TenPoint's RFP Nos. 21, 23, 25 and 52.

### i.    RFP No. 21

RFP No. 21 asks Plaintiff to produce "all literature or other materials referenced, reviewed, or relied on in connection with the research, design, development, engineering, experimentation, manufacturing, and sales of the Plaintiff's Crossbows."  (ECF Doc. 119-4, p. 10.)  After raising general and specific objections to the RFP request, Ravin responded: "Unless and until narrowed, clarified, and/or the relevance explained, Ravin will not produce any documents in response to this Request."  (ECF Doc. 119-5, p. 21.)

---

[4] This determination is made because a denial of the pending motion on a procedural technicality would likely only postpone the filing of an additional motion to compel, since the parties have failed to demonstrate an ability to resolve the majority of their discovery disputes without the need for direct Court intervention.

TenPoint asserts in its Motion that the requested information is relevant because

"'Plaintiff's Crossbows' are those allegedly covered by the Patents-in-Suit[,]" and:

> As far as materials referenced in connection with the research, design, development, engineering, experimentation, and manufacturing of Ravin's Crossbows, those materials may show whether Ravin really conceived of its inventions or whether it simply copied others' ideas. Referenced manufacturing and sales materials will show the costs associated with those crossbows, as well as market conditions, thus implicating the lost profits or reasonable royalties that Ravin claims it is owed.

(ECF Doc. 132, p. 4.)

In opposition, Plaintiff asserts it has produced documents responsive to this request and "TenPoint does not identify what, if anything, is purportedly missing from Ravin's production in this regard."  (ECF Doc. 134, p. 4.)  Defendant is not satisfied and contends that Ravin "seems to be saying that the documents it chose to produce are good enough" but "is not saying that it complied with Rule 34 and produced all material responsive to the request[]. . . ."  (ECF Doc. 138, p. 3.)

As an initial matter, the undersigned finds that the request which asks for "*all* literature or *other materials* . . ." is overly broad and lacking in particularity.  *See* Fed. R. Civ. P. 34(b)(1)(A) (requiring a party making a request under Rule 34 to "describe with reasonable particularity each item or category of items to be inspected").  Although Ravin's initial response to the RFP indicated that Ravin would not produce documents in response to RFP No. 21, "[u]nless and until narrowed, clarified, and/or the relevance explained," Ravin represents in its opposition brief that it "has already produced in this case – documents relating to the research, design, development, engineering, experimentation, manufacturing, and sale of Ravin crossbows."  (ECF Doc. 134, p. 4.)  Given the foregoing, the undersigned concludes that Ravin has sufficiently responded to RFP No. 21, and TenPoint's Motion as to RFP No. 21 is **DENIED**.

## ii.  RFP No. 23

RFP No. 23 asks Plaintiff to produce "all documents, things and electronically stored information reflecting the first disclosure, public and/or non-public, of any part (strings, power cable, riser, stock, trigger, etc.) of any crossbow by Ravin to anyone."  (ECF Doc. 119-4, p. 10.) After raising general and specific objections to the RFP request, Ravin responded: "Unless and until narrowed, clarified, and/or the relevance explained, Ravin will not produce any documents in response to this Request."  (ECF Doc. 119-5, p. 22.)

In its Motion, TenPoint argues that this request seeks relevant information, asserting:

> Ravin's first disclosure of crossbow parts is relevant to patent invalidity. See 35 U.S.C. § 102(a)(1). Crossbows have been known for hundreds of years, and Ravin cannot possibly claim to have invented crossbows per se. At most, it may allege to have improved them by improving certain component parts. But if it disclosed those parts before a certain date, those parts would be part of the prior art available to invalidate any resulting patents. This may be true even if the disclosure was non-public. *See Helsinn Healthcare S.A. v. Teva Pharms. USA*, 139 S. Ct. 628, 633 (2019). Such disclosure might also be accompanied by Ravin's statements characterizing such parts, whether as inventive or admissions that they are others' ideas.

(ECF Doc. 132, pp. 4-5.)  In opposition, Ravin asserts:

> The Asserted Patents are directed to improved crossbows and methods of operating the same. These improved crossbows are comprised of hundreds of parts, and RFP No. 23 is not limited to a particular subset of parts or subassemblies – without any limitations, such a request is unduly burdensome. To the extent TenPoint purports to limit RFP No. 23 to those parts that were in existence as of the claimed priority date of the Asserted Patents to assess validity, TenPoint fails to explains how Ravin – which came into existence on February 10, 2015 – could either publicly or privately disclose to a third-party any part prior to the December 16, 2013 priority date of the Asserted Patents. In its strained attempt to challenge the validity of the Asserted Patents, TenPoint appears to be requesting that the Court compel Ravin to produce documents that, if they existed, pre-date Ravin's existence. There are no such documents.

(ECF Doc. 134, pp. 4-5 (internal footnote omitted).)  In its reply, TenPoint challenges Ravin's assertion as to the priority date and its assertion that documents need not be produced after the

alleged December 2013 priority date or prior to Ravin coming into existence in February 2015.
(ECF Doc. 138, pp. 3-4.)  TenPoint's arguments in its reply make it clear that it is not limiting
RFP No. 23 to only those parts that came into existence as of the claimed priority date of
December 2013.  The undersigned finds that the information TenPoint attempts to discover may
be relevant to the claims/defenses in this case.  However, Ravin has argued that the request as
currently constructed is overly broad because its "improved crossbows are comprised of
hundreds of parts, and RFP No. 23 is not limited to a particular subset of parts or subassemblies.
. . ."  (ECF Doc. 134, p. 4.)  The undersigned agrees.  The RFP which requests production as to
"first disclosure, public and/or non-public, of *any* part (strings, power cable, riser, stock, trigger,
etc.) of *any* crossbow by Ravin to *anyone*" (ECF Doc. 119-4, p. 10 (emphasis added)) is
overbroad.  Accordingly, TenPoint's Motion as to RFP No. 23 is **DENIED**.

### iii.    RFP No. 25

RFP No. 25 asks Plaintiff to produce "all nondisclosure or confidentiality agreements
between Ravin and any third-party."  (ECF Doc. 119-4, p. 11.)  After raising general and specific
objections to the RFP request, Ravin responded: "Unless and until narrowed, clarified, and/or the
relevance explained, Ravin will not produce any documents in response to this Request."  (ECF
Doc. 119-5, p. 23.)

In its Motion, TenPoint argues that its request is proper, asserting:

Ravin's confidentiality agreements will identify the third parties from whom it
has received such information, thus allowing TenPoint to seek additional
discovery from them.  For example, certain disclosure in the Patents-in-Suit may
have actually come from third parties rather than being invented by Ravin. Such
agreements will also identify third parties with whom Ravin has shared
confidential information (e.g., suppliers and manufacturers of crossbow parts;
third persons potentially looking to purchase Ravin).  Discovery from such third-
party suppliers and manufacturers would show when Ravin reduced its inventions
to practice . . . and whether those third parties contributed to the patents and
should have been listed as coinventors. As for potential purchasers of Ravin, their

due diligence typically requires full disclosure by the acquisition target, including financial information (sales volume, revenue, costs, profits), evaluation of intellectual property, and evaluation of any infringement.  Such disclosures are often audited or reviewed by other professionals and include representations or warranties of accuracy; and because they are not made to an adversary in the context of a lawsuit, they have additional assurances of reliability.

(ECF Doc. 132, p. 5.)  In opposition, Ravin asserts:

TenPoint's explanation for nondisclosure and confidentiality agreements between Ravin and third-parties does not survive scrutiny. First, to the extent TenPoint is looking for disclosures that pre-date the December 16, 2013 priority date of the Asserted Patents to substantiate TenPoint's speculation relating to conception, reduction to practice, or unpled inventorship challenges, TenPoint is asking for Ravin agreements that predate the existence of Ravin. It is elementary that no such documents exist. Second, since Ravin came into existence in 2015, well-after the original priority date for the Asserted Patents, how and with whom Ravin is conducting its business is of no relevance to the claims and defenses in this case. TenPoint – Ravin's competitor – offers no authority to the contrary.

(ECF Doc. 134, p. 5.)  TenPoint in its reply again challenges Ravin's assertion as to the priority date and its assertion that documents need not be produced after the alleged December 2013 priority date or prior to Ravin coming into existence in February 2015.  (ECF Doc. 138, pp. 3-4.) The undersigned finds that the request is overbroad.  It asks for *all* nondisclosure or confidentiality agreements between Ravin and *any* other third-party without identifying or limiting the request to certain topics or subjects and with no date restrictions.  Accordingly, Defendant's Motion as to RFP No. 25 is **DENIED**.

### iv.    RFP No. 52

RFP No. 52 asks Plaintiff to produce "documents, things and electronically stored information sufficient to evidence when each prior art to the Patents-in-Suit was first discovered by Ravin."  (ECF Doc. 119-4, p. 14.)  After raising general and specific objections to the RFP request, Ravin responded that: "To the extent Ravin understands this Request, Ravin will produce relevant, non-privileged responsive documents, to the extent any such documents exist,

that are in its possession, custody, or control, and are located after a reasonable search." (ECF

Doc. 119-5, p. 43.)

TenPoint argues that RFP No. 52 seeks to discover relevant information, stating:

The prior art to the Patents-in-Suit is relevant because it forms the basis of an invalidity defense. See 35 U.S.C. §§ 102, 103. As far as Ravin's first discovery of the prior art, that is relevant to whether Ravin committed inequitable conduct in prosecuting those patents. If Ravin knew of invalidating prior art and deliberately failed to disclose it, intending to mislead the USPTO into granting a patent, such a patent would be unenforceable. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287, 1290 (Fed. Cir. 2011) (en banc).

(ECF Doc. 132, p. 8.)  Ravin responds that:

Ravin has produced all responsive documents with the understanding that this RFP (a) is not seeking privileged information created or received on or after the filing of this lawsuit (December 17, 2021) and (b) excludes emails and their attachments. In addition, Ravin has supplemented its response to Interrogatory No. 16, which provides the relevant timing as to when the TenPoint-identified prior art was discovered by Ravin. (Ex. B at 23.)

(ECF Doc. 134, pp. 9-10.)  Given the foregoing, the undersigned finds Ravin has sufficiently

responded to RFP No. 52, except for its statement that it has excluded attachments to emails.

For reasons similar to those explained in Section III.B.3, *supra*, the Court orders that

Ravin take the following actions within two weeks of this Order:

- To the extent Ravin discovered non-privileged documents that are responsive to RFP No. 52 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall produce those documents;

- To the extent Ravin discovered privileged documents that are responsive to RFP No. 52 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall supplement its privilege log to list such documents.

Ravin and its counsel are not required to run email searches to comply with this Order.

TenPoint's Motion as to RFP No. 52 therefore is **GRANTED in part**. The undersigned expects that Ravin's supplemental responses to these RFPs will adequately address and resolve any ambiguity as to Ravin's response which excluded email attachments.

For the reasons explained above, TenPoint's Motion is **DENIED** as to RFP Nos. 21 and 23, **GRANTED** as to RFP No. 25, and **GRANTED in part** as to RFP No. 52.

### 7. Group 4 - For Which Plaintiff Objects to Production (RFP Nos. 48, 59, 63, 120, and 122)

The undersigned turns to the remaining RFPs in dispute, those RFPs included in Group 4: RFP Nos. 48, 59, 63, 120, and 122. Each is addressed below.

#### i. RFP No. 48

RFP No. 48 asks Plaintiff to produce "all documents, things and electronically stored information reflecting accusations of patent infringement by any third-party against Ravin (including, but not limited to, those in the MCP Case)." (ECF Doc. 119-4, p. 14.) After raising general and specific objections to the RFP request, including an objection that RFP No. 48 was duplicative of RFP No. 46, Ravin responded that it would "not produce any documents in response to [the] Request." (ECF Doc. 119-5, p. 40.)

In its Motion, TenPoint asserts that RFP Nos. 46 and 48, which seek information regarding any third-party accusations against Ravin, seek relevant information because:

> Any third-parties accusations of Ravin's patents being invalid would support . . .TenPoint's invalidity defense. The converse would undermine that defense. As for third-party accusations of Ravin's infringement (including by MCP IP in case no. 3:22-cv-00004 (W.D. Wis.)), Ravin has argued that TenPoint's infringement is malicious, consciously wrongful, wanton, and willful, for which damages should be trebled. (*See* Doc. No. 1 (¶¶ 46, 55, 64, 73, 82, 91); Doc. No. 88-7 at 13.) The Supreme Court has explained that enhanced damages should be reserved for egregious cases of culpable behavior characteristic of a pirate. *Halo Elecs. v. Pulse Elecs.*, 579 U.S. 93, 103-04 (2016). But if Ravin itself has willfully, maliciously, and wantonly infringed others' patents like a pirate (as accused by MCP IP), then even if there were any infringement by TenPoint, it is not

egregious and as culpable as Ravin's behavior, thus undercutting Ravin's claim for enhanced damages.

(ECF Doc. 132, pp. 7-8.)  Ravin responds that:

> To the extent RFP Nos. 46-48 implicate the Asserted Patents, Ravin has produced all responsive documents with the understanding that these RFPs (a) are not seeking privileged information created or received on or after the filing of this lawsuit (December 17, 2021) and (b) exclude emails and their attachments. Ravin otherwise objects to these Requests as they are not limited to the Asserted Patents. TenPoint fails to offer any legal authority that supports the production of documents directed to third-party accusations against Ravin stemming from wholly unrelated patents in separate litigation. What third-parties may allege against Ravin in disparate litigation regarding different patents says nothing about whether and how TenPoint infringes the Asserted Patents or if TenPoint's behavior will be deemed willful in this case, allowing for treble damages. Because documents or information from the MCP IP litigation is irrelevant to any claim or defense here, and because both Ravin and MCP IP (through its licensees) are competitors of TenPoint, TenPoint's broad attempt to obtain otherwise confidential or sensitive information relating to allegations in entirely unrelated litigation is merely a fishing expedition that should be rejected.

(ECF Doc. 134, p. 9.)  The undersigned finds TenPoint has not established that its request for infringement accusations against Ravin as to patents unrelated to the Asserted Patents in this action seeks information relevant to the parties' claims or defenses.  TenPoint's reliance on *Halo Electronics* does not advance its position in this regard.  In *Halo Electronics*, the Supreme Court explained that an award of enhanced damages was limited "to egregious cases of misconduct beyond typical infringement." 579 U.S. at 110.  It said nothing about the extent of discovery that may or may not be warranted on the issue, and TenPoint provides no authority to support its request to cast such a wide net.  The undersigned therefore finds that Ravin has sufficiently responded to RFP No. 48, except for its statement that it has excluded attachments to emails.

For reasons similar to those explained in Section III.B.3, *supra*, the Court orders that Ravin take the following actions within two weeks of this Order:

- To the extent Ravin discovered non-privileged documents that are responsive to RFP No. 48 without conducting an electronic correspondence search, and found those

documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall produce those documents;

- To the extent Ravin discovered privileged documents that are responsive to RFP No. 48 without conducting an electronic correspondence search, and found those documents in a location separate from electronic correspondence or related attachments, but nevertheless withheld the documents because they are also known to have been attached to an email, Ravin shall supplement its privilege log to list such documents.

Ravin and its counsel are not required to run email searches to comply with this Order.

Accordingly, TenPoint's Motion to compel production of documents regarding infringement accusations by third-parties as to patents unrelated to the Asserted Patents in this action is **GRANTED in part** as to RFP No. 48.

### ii.    RFP Nos. 59 and 63

RFP Nos. 59 and 63 seek production of "documents and electronically stored information sufficient to evidence the hourly rates of all counsel for Ravin in the MCP Case" (ECF Doc. 119-4, p. 15) and "sufficient to evidence the attorneys' and any paralegal fees billed to Ravin for the MCP Case" (ECF Doc. 119-4, p. 16).  After raising general and specific objections to these RFP requests, Ravin responded that it would "not produce any documents in response to [the] Request[s]."  (ECF Doc. 119-5, p. 47, 49-50.)

In its Motion, TenPoint argues that the information it seeks in RFP Nos. 59 and 63 is relevant because:

> Ravin has requested "its reasonable attorneys' fees." (Doc. No. 1 (¶¶ 47, 56, 65, 74, 83, 92).) The starting point for determining such fees is usually the lodestar (a reasonable rate multiplied by a reasonable number of hours). *Hescott v. City of Saginaw*, 757 F.3d 518, 526 (6th Cir. 2014). Ravin is also currently involved in a patent infringement suit with MCP IP (as mentioned above for RFPs 46, 48), though represented by a different firm. That firm's hourly rates and fees will provide a comparison data point to evaluate whether Ravin's requested fees are reasonable. The cases are comparable in that both are for patent infringement (with its patent-specific aspects, like claim construction and contentions), both assert multiple patents in the archery field, and both involve similar defenses.

24

(ECF Doc. 132, p. 8.)  Ravin argues that the information requested is not relevant and asserts that the request is premature.  (ECF Doc. 134, pp. 10-11.)  It asserts that:

> Ravin is seeking its attorneys' fees and costs in this case, which are issues that will be resolved following the determination of liability and damages and upon the submission of a fee petition and bill of costs. Thus, TenPoint's RFP Nos. 59, 63 . . . at best, are premature, postponing any production of such documents evidencing Ravin's attorneys' fees until later in this case. This is particularly appropriate given that Ravin has confirmed its counsel's hourly rates and provided the Court the fees and costs information as incurred by Ravin thus far and what Ravin anticipates fees and costs will be for the duration of this litigation. TenPoint offers no authority that Ravin is obligated to do more, especially as it relates to RFP Nos. 59 and 63, which seek the hourly rates for attorneys and support staff in the unrelated MCP IP litigation, which is being handled by different outside counsel and has nothing to do with any claims or defenses in the Ravin-TenPoint dispute. TenPoint offers no substantiation that this information is a relevant "comparison data point" to evaluate the reasonableness of Ravin's future fee request in this case. (Doc. No. 132 at 8.)  And, in fact, <u>such an argument runs afoul of TenPoint's recent argument to this Court, where TenPoint insisted that the relevant comparison for reasonable hourly rates is based on the location of the case.</u> *See Ravin Crossbows, LLC v. Hunter's Manufacturing Company, Inc. d/b/a TenPoint Crossbow Technologies*, Case No. 5:18-cv-01729-SL (N.D. Ohio), TenPoint's Opposition to Plaintiff's Petition for Attorneys' Fees and Expenses, Doc. No. 177 at 5 ("So instead of looking at rates charged by Dallas, Milwaukee, and Chicago attorneys, the proper reference is Akron attorneys, since this case is venued in Akron."). To be clear, the attorneys representing Ravin in the MCP IP litigation, which is venued in the Western District of Wisconsin, are not Akron-based, but located in Overland Park, Kansas, Minneapolis, Minnesota, and Madison, Wisconsin.

(*Id*. (emphasis added).)  In its reply, TenPoint contends that Ravin does not acknowledge that Ravin argued to the Court in that other case that rates from attorneys outside the local community should be considered.  (ECF Doc. 138, p. 5.)

The lodestar or the "product of 'a reasonable hourly rate' and 'the number of hours reasonably expended on the litigation,'" is generally the starting point for determining a reasonable attorney fee.  *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).  The Sixth Circuit "uses the

'community market rule' to calculate a reasonable billing rate."  *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020); *see also Dowling*, 320 F. App'x at 446 ("[A] useful guideline in determining a reasonable hourly rate is the 'prevailing market rate [] <u>in the relevant community</u>'") (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (bracket in original) (emphasis added)).  The Sixth Circuit has explained that "it's called the 'community market rule' for a reason: the relevant inquiry is what billing rates are required 'to encourage competent lawyers *within the relevant community* to undertake legal representation.'"  *Linneman*, 970 F.3d at 630 (emphasis in original).

Considering the foregoing, the undersigned concludes that TenPoint has not shown the relevance of attorneys' fee and paralegal information from an unrelated patent case involving different outside counsel for Ravin, and where counsel are not only located outside the Akron legal community but also located outside the Ohio legal community.  Accordingly, TenPoint's Motion as to RFP Nos. 59 and 63 is **DENIED**.

### iii.    RFP No. 120

RFP No. 120 seeks production of "all documents, things and electronically stored information having any of the following keywords, including any misspellings:"

a. Bednar

b. TenPoint

c. Skeriotis

d. "Narrow Crossbow"

e. Helical

f. HeliCoil

g. Helix

26

h. Spiral

i. Spherical

j. "power cable"

k. Infringe

l. Infringement

m. Non-infringement

n. Validity

o. Invalidity

p. "Prior art"

q. Stanziale

r. Islas

s. Norkus

t. Darlington

u. Rex

v. Lester

w. Larson

x. Sims

y. Park

z. Popov

aa. Caldwell

bb. Despart

cc. Ghetrax

dd. Tecnarm

    ee. Mathews

    ff. McPherson

    gg. "MCP IP"

    hh. "Precision Shooting Equipment"

    ii. PSE

    jj. Barnett

    kk. "Killer Instinct"

    ll. Darton

(ECF Doc. 119-4, pp. 23-25.)  After raising general and specific objections to this RFP request, which included an objection that TenPoint did not comply with the ESI Order "to the extent it is an email production request," Ravin responded that "[u]nless and until requested pursuant to [ESI] Order . . ., and in compliance with the same, Ravin [would] not produce any documents in response to [the] Request."  (ECF Doc. 119-5, p. 91.)

    In its Motion, TenPoint asserts that RFP No. 34 is a general request which does not encompass email or other electronic correspondence.  (ECF Doc. 132, p. 10.)  TenPoint also challenges Ravin's general objections, including its objections that the request is overly broad or unduly burdensome (*id.* at p. 11) and/or does not seek relevant information (*id*. at p. 3.)  It argues that the information it seeks in RFP No. 120 is relevant because:

> Keywords n-ff and ll relate to invalidity and prior art (e.g., inventors or patentees). Keywords b, k-m, and ee-ll relate to Ravin's competitors and thus go to potential infringement and invalidity of Ravin's patents. Keywords a-d relate to TenPoint and go to infringement (including willfulness) and invalidity of Ravin's patents. Keywords d-j relate to specific aspects of the Patents-in-Suit that Ravin has asserted are innovative, thus being relevant to their invalidity.

(*Id*. at p. 9.)  Ravin responds that:

RFP 120 is the epitome of an overly broad and unduly burdensome request, setting forth 38 keywords, including unidentified misspellings, for searches across unidentified custodians and document repositories. At minimum, RFP No. 120 appears to try to circumvent the ESI Order in this case, which contemplates that costs may be shifted for disproportionate ESI production requests, which is exactly what this Request is. Such a request appears to be motivated by TenPoint's desire to drive up Ravin's expense in this matter. TenPoint's paper thin justification for this request merely identifies broad categories of possible relevance. This – without more – should not require compliance with such a request that fails to take into account that documents may contain these words but have nothing to do with any claim or defense in this case.

(ECF Doc. 134, p. 11.)

The undersigned finds that the request as composed is overly broad and amounts to a fishing expedition.  It not only requires that ESI searches be conducted for thirty-eight different keywords with no narrowing criteria provided, but it also requires that the searches include unspecified misspellings.  Accordingly, TenPoint's Motion as to RFP No. 120 is **DENIED**.[5]

### iv.    RFP No. 122

RFP No. 122 requests production of "all correspondence with the Consumer Product Safety Commission."  (ECF Doc. 119-4, p. 92.)  After raising general and specific objections to this RFP request, Ravin responded that "[u]nless and until narrowed, clarified, and/or the relevance explained, Ravin [would] not produce any documents in response to [the] Request." (ECF Doc. 119-5, p. 93.)

In its Motion, TenPoint argues that the request seeks production of relevant information, asserting that:

Ravin has been involved in at least one recall since 2017 that resulted in its bows injuring users, during which it communicated with the CPSC. Ravin likely explained the operation of its crossbows and how their design, engineering, and manufacturing allows them to operate safely, in response to which the CPSC may have pointed out defects or perhaps suggested improvements to its bows. Thus,

---

[5] Given this determination, the undersigned finds it unnecessary to address Ravin's mootness argument which is based on the Court's order striking TenPoint's invalidity contentions based on undisclosed art.  (ECF Doc. 152, pp. 2-3.)

some of the improvements in Ravin's patents may have come from the CPSC, rather than Ravin. And Ravin's discussions about the operation of its bows (and which components perform what functions) is likely to be more candid than the puffery in its advertisements on which it may base secondary considerations of nonobviousness. *See Fox Factory v. SRAM, LLC*, 944 F.3d 1366, 1372 (Fed. Cir. 2019) (listing secondary considerations).

(ECF Doc. 132, p. 9.)  Ravin responds that:

TenPoint fails to offer any credible explanation as to why Ravin should produce any communications with the CPSC in response to RFP No. 122. As a threshold matter, TenPoint cites to a Ravin 2017 recall, which relates to Ravin Arrow Nocks – not anything related to the Asserted Patents or any claims or defenses in this patent infringement case. (Ex. C, Ravin Crossbows Recalls Arrow Nocks Due to Injury Hazard (https://www.cpsc.gov/Recalls/2018/Ravin-Crossbows-Recalls-Arrow-Nocks-Due-to-Injury-Hazard).) Instead, this RFP appears to be an improper backdoor to information that TenPoint's expert, Stephen Batzer, has long been trying (unsuccessfully) to source for his personal injury matters against Ravin. Second, TenPoint's rank speculation that "some of the improvement in Ravin's patents may have come from the CPSC rather than Ravin," (Doc. No. 132 at 9), at minimum, fails to account for the timing of when Ravin was purportedly corresponding with the CPSC and the prosecution of the Asserted Patents. As discussed above, the relevant priority dates for the Asserted Patents were well before 2017, which means there is no possibility that anything from the CPSC in 2017 or later has anything to do with the claimed inventions at issue in this case. Third, it is pure conjecture on TenPoint's behalf that any Ravin statement made to the CPSC would be useful in any secondary considerations of non-obviousness analysis. TenPoint does not describe how correspondence with the CPSC relates to "commercial success, long felt but unsolved needs, failure of others, and unexpected results." Fox Factory v. SRAM, LLC, 944 F.3d 1366, 1372 (Fed. Cir. 2019). Finally, TenPoint says nothing as to how RFP No. 122 can be squared with the disclosure prohibitions in the Consumer Product Safety Act, 15 U.S.C. § 2055. The Court should deny TenPoint's Motion to Compel relating to RFP No. 122.

(ECF Doc. 134, p. 12.)  As an initial matter, TenPoint's argument in support of relevance is purely speculative.  It asserts that "Ravin *likely* explained the operation of its crossbows . . ., in response to which the CPSC *may have* pointed out defects or perhaps suggested improvements to its bows. Thus, some of the improvements in Ravin's patents *may have* come from the CPSC" and "Ravin's discussions about the operation of its bows . . . *is likely* to be more candid than the puffery in its advertisements . . ." (ECF Doc. 132, p. 9 (emphasis added).)  The speculative

30

arguments as to relevance are further undercut by Ravin's contention that that recall was not related to the Asserted Patents.  (ECF Doc. 134, p. 12.)

Given the foregoing, the undersigned finds that TenPoint has not demonstrated that the information that it seeks in RFP No. 122 is relevant to a claim or defense in the case.  Instead, it is a fishing expedition to uncover information regarding communications that it speculates may have occurred.  Accordingly, TenPoint's Motion as to RFP No. 122 is **DENIED**.

For the reasons explained, TenPoint's Motion is **DENIED** as to RFP Nos. 59, 63, 120, and 122 and **GRANTED in part** as to RFP No. 48.

## C.     Defendant's Motion to Determine Sufficiency of RFA Responses

### 1.     Legal Standard for RFAs Under Rule 36

Under Fed. R. Civ. P. 36(a)(1)(A), a party is permitted to seek "requests for admissions as to "facts, the application of law to fact, or opinions about either." *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009).  However, the Sixth Circuit has explained that "[r]equests for admissions are not a general discovery device." *Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986) (finding district court properly deemed 1,400 requests, styled as "requests for admissions," to be interrogatories).  While Rule 36 "permits one party to request admissions as to a broad range of matters by another party, including ultimate facts and the application of law to fact," *Goodson v. Brennan*, 688 F. App'x 372, 375 (6th Cir. 2017), the Sixth Circuit has nevertheless observed that the rule "is essentially intended to facilitate proof at trials by obviating the need to adduce testimony or documents as to matters that are really not in controversy," *Petroff-Kline*, 557 F.3d at 293.  Thus, "[r]equests for admissions . . . differ from other discovery tools contemplated under the Federal Rules of Civil Procedure." *Cogent Sols. Grp., LLC v. Brown*, No. 2:12-CV-665, 2013 WL 12121522, at *2 (S.D. Ohio Mar. 4, 2013).

31

Their "'proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.'" *Id.* (quoting *Quicken Loans v. Jolly*, No. 2:07-cv-13143, 2007 WL 3408551, at *2 (E.D. Mich. Nov. 15, 2007)); *see also Minnesota Min. & Mfg. Co. v. Norton Co.*, 36 F.R.D. 1, 2–3 (N.D. Ohio 1964) (explaining that "Rule 36 is designed to eliminate the necessity of proof of a fact where the parties recognize that the fact is obvious" and "is supposed to be a time saver," and finding that party's requests for admissions of fact irresponsible, oppressive, burdensome and an attempt to "try the whole lawsuit on paper"). Requests for admission "conspicuously crafted for purposes of discovery rather than to eliminate the necessity of proving facts that are not in substantial dispute" have thus been found improper. *See Heid v. Mohr*, No. 2:18-CV-311, 2022 WL 883768, at *6 (S.D. Ohio Mar. 24, 2022).

Further, in a Rule 36 request for admission, "[e]ach matter must be separately stated," s*ee* Fed. R. Civ. P. 36(a)(2), and a party is "not required to admit or deny requests that consist of statements that are vague or ambiguous."  *See* 7 Moore's Federal Practice § 36.10[6] (2024); *see also Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18CV2017, 2021 WL 681403, at *4 (N.D. Ohio Feb. 22, 2021) (internal citations and quotations omitted).  "[W]hen good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest."  *See* Fed R. Civ. P. 36(a)(4).  "While Rule 36 expressly contemplates that a responding party may qualify its answer to address any ambiguity introduced by the proponent's statement to be admitted or denied, this should be the exception and not the rule, and responses need not be required where the requests are replete with such deficiencies." *Stephenson*, 2021 WL 681403, at *4 (internal citations omitted).

The party who propounds RFAs "bears the burden of setting forth simple and direct [RFAs] that can be answered with a simple admit or deny without an explanation, though

32

qualifications or explanations for the purpose of clarifying a response are permitted." *Stephenson*, 2021 WL 681403, at *3 (internal citations and quotations omitted) (alterations in original removed); *see also Honeycutt v. First Fed. Bank*, No. 02-2710 M1/V, 2003 WL 1054235, at *1 (W.D. Tenn. Mar. 5, 2003) ("Generally, the statements posed by the party seeking their admission should be capable of an answer by a yes or no.") (internal citations and quotations omitted). "To facilitate clear and succinct responses, the facts stated within the request must be singularly, specifically, and carefully detailed." *Exp. Dev. Canada v. SDR Grp., Inc.*, No. 19-11536, 2020 WL 13577497, at *2 (E.D. Mich. May 20, 2020) (internal citation omitted). Thus, "statements in which one part of the question could be readily answered yes or no, whereas the remainder of the question requires explanation, are properly objectionable." *Honeycutt*, 2003 WL 1054235, at *1 (internal citation and quotations omitted) (alterations in original removed).

Although RFAs "may relate to the application of law to fact," they "should not be confused with pure requests for opinions of law, which are not contemplated by the rule. Nor are requests seeking legal conclusions appropriate when proceeding under Rule 36." *Petroff-Kline*, 557 F.3d at 293 (quoting 7 Moore's Federal Practice § 36.10[8] at 36–26 (3d ed. 2008) (footnotes omitted)). But "[t]he distinction between the application of law to fact and a legal conclusion is, unfortunately, not always easy to draw." *Stephenson*, 2021 WL 681403, at *4 (quoting *Perez v. KDE Equine, Inc.*, 2017 WL 56616 at *9 (W.D. Ky. Jan. 4, 2017) (internal quotations and parentheticals omitted). RFAs are "properly objectionable if they . . . contemplate a legal standard; if they require lengthy explanations before they can fairly be answered; or if they require inferences." *Honeycutt*, 2003 WL 1054235, at *1 (citations omitted).

Where a party objects to an RFA propounded under Rule 36, the party must state the grounds for the objection. *See* Fed. R. Civ. P. 36(a)(5); *see also Stephenson*, 2021 WL 681403 at *3. The party requesting admissions may seek from the court a determination as to "the sufficiency of an answer or objection." *See* Fed. R. Civ. P. 36(a)(6). "The requesting party bears the burden of demonstrating that the responding party's answers or objections were insufficient." *Heid*, 2022 WL 883768, at *3. A district court has "substantial discretion to determine the propriety of each request for admission and the sufficiency of the responses thereto." *Stephenson*, 2021 WL 681403, at *4 (citing *Advantage Industrial Systems, LLC v. Aleris Rolled Products, Inc.,* 2020 WL 4432415 at * 14 (W.D. Ky. July 31, 2020)). "Unless the court finds an objection justified, it must order that an answer be served." *See* Fed. R. Civ. P. 36(a)(6). If the court finds that a party's answer fails to comply with Fed. R. Civ. P. 36, "the court may order either that the matter is admitted or that an amended answer be served." *Id.*

### 2. Parties' Arguments Relating to RFAs

TenPoint argued in its Motion that Ravin's answers to RFA Nos. 1-18, 20-93, 96-101, and 103-106 are deficient under Rules 26 and 36 of the Federal Rules of Civil Procedure. (ECF Doc. 132, pp. 13-16; ECF Doc. 138, pp. 5-6.) TenPoint seeks to determine the sufficiency of Ravin's RFA responses pursuant to Fed. R. Civ. P. 36(a)(6) (*id.*) and challenges Ravin's objections: based on privilege, immunity, or vagueness/ambiguity (ECF Doc. 132, p. 14); seeking "premature expert testimony" (*id.*); not describing the requested information with reasonable particularity (*id.*); encompassing irrelevant information or seeking irrelevant information because the requests involve specific prior art references not listed in TenPoint's initial invalidity contentions (*id.* at pp. 14-15); being compound and consisting of subparts (*id.* at pp. 15-16); and being overly broad or unduly burdensome because the requests are "unbounded

by time" (*id.* at p. 16).  TenPoint also argues that Ravin's responses in some instances were

nonresponsive.  (*Id*. at p. 16.)

Ravin argues in response that most of TenPoint's 106 RFAs are in dispute, and that the

RFAs propounded by TenPoint "are an improper use of Rule 36 as a discovery device" because

they are not simple, direct RFAs that "can be answered with a simple admit or deny without an

explanation."  (ECF Doc. 134, pp. 14-15 (internal citation omitted).)  Ravin contends that

"nothing more should be required" because it provided "sufficient" responses to "poorly

constructed RFAs" and/or it "fairly admitted what it [could] and otherwise denied the Requests

as explained."  (*Id*.)  Ravin also argues that many of the disputed RFAs are "directed to

controversial issues, rife with privilege or otherwise subject to expert discovery, and are not

proper matters for Rule 36."  (*Id*. at p. 16.)  Finally, it argues that certain requests should be

withdrawn in light of the Court's rulings striking certain supplemental invalidity contentions.

(*Id*. at p. 16; ECF Doc. 152, pp. 2-3.)

> **3.     Whether RFAs Seek Irrelevant Information In Light of Court Ruling On Supplemental Invalidity Contentions**

Defendant agrees that its arguments regarding Ravin's invalidity-relevance objections as

to RFA Nos. 79-93 are no longer applicable in light of the Court's recent rulings, but Defendant

continues to argue that that the remainder of its RFAs seek relevant information and are proper.

(ECF Doc. 151.)  Plaintiff argues that a larger subset of Defendant's RFAs (RFA Nos. 16, 17,

20-93, and 95-106)[6] should be withdrawn in light of the Court's recent rulings.  (ECF Doc. 152.)

The undersigned addresses these arguments below.

---

[6] Although Ravin includes RFA No. 95 and 102 in its supplemental brief, those two RFAs were identified as still in progress in the October 24, 2023 Joint Status Report (ECF Doc. 131, p. 2) and are therefore not considered in this Motion (ECF Doc. 132, p. 13.)

### i.    RFA Nos. 79-93

TenPoint's Motion includes a challenge to RFA Nos. 79-93.  However, TenPoint states in its March 11, 2024 supplemental brief that it was "forced to withdraw" its argument regarding the "'invalidity-relevance objections'" as to RFA Nos. 79-93 in light of the Court's recent order striking certain supplemental invalidity contentions submitted by TenPoint.  (ECF Doc. 151, p. 3.)  Given this concession, TenPoint's Motion as to RFA Nos. 79-93 is **DENIED**.  The undersigned next turns to the remaining RFAs that Ravin contends should be withdrawn.

### ii.    RFA Nos. 72-77

Ravin argues that RFA Nos. 72-77 should also be withdrawn since they are "directed to prior art that TenPoint improperly and untimely disclosed in its Supplemental Invalidity Contentions" and "seek admissions regarding Ravin and its attorneys' actions during prosecution of the Asserted Patents predicated on 'purely speculative' allegations of inequitable conduct, which the Court rejected" and therefore not relevant to any claim or defense.  (ECF Doc. 152, p. 3 (citing ECF Doc. 149, pp. 19-20).)  As to these RFAs, Ravin objected in its RFA responses based, in part, on its contention that the U.S. Patent Application Publication at the center of these RFAs (2011/0308508) was not raised in TenPoint's Preliminary Invalidity Contentions and to the extent that TenPoint was improperly seeking to amend its invalidity contentions to include that U.S. Patent Application Publication.  (ECF Doc. 119-7, pp. 52-57.)  TenPoint argues that RFA Nos. 72-77 need not and should not be withdrawn notwithstanding the Court's recent ruling because there is a nexus between U.S. Patent Application Publication (2011/0308508) and U.S. Patent No. 8,651,095, which TenPoint asserted in its counterclaim and initial invalidity contentions.  (ECF 151, p. 3 (citing ECF Doc. 31, pp. 21-24; ECF Doc. 90-8, pp. 17-18).)

36

Although TenPoint did not plead inequitable conduct as a counterclaim and the Court has struck its supplemental inequitable conduct claims, TenPoint "included references to inequitable conduct in its earlier contentions."  (ECF Doc. 149, p. 18 (citing ECF Doc. 139-1, p. 35).)  Additionally, the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis*, 135 F.3d at 402.

Considering the foregoing, the undersigned finds that withdrawal of RFA Nos. 72-77 as requested by Ravin in its supplemental brief is not warranted.

### iii.    RFA Nos. 16, 17, 20-71, 78, 96-101, 103-106

Ravin also argues that RFA Nos. 16, 17, 20-71, 78, 96-101, 103-106 should be withdrawn because they also "seek admissions regarding Ravin and its attorneys' actions during prosecution of the Asserted Patents predicated on 'purely speculative' allegations of inequitable conduct, which the Court rejected" and therefore are not relevant to any claim or defense.  (ECF Doc. 152, p. 3 (citing ECF Doc. 149, pp. 19-20).)  TenPoint argues that the Court struck its inequitable conduct contentions, finding the claim not "sufficiently developed," but did not preclude it from developing the claim further.  (ECF Doc. 151, p 2.)  Thus, it contends that it may still seek discovery that relates to this issue.

As discussed above, although TenPoint did not plead inequitable conduct as a counterclaim and the Court has stricken its supplemental inequitable conduct claims, TenPoint "included references to inequitable conduct in its earlier contentions."  (ECF Doc. 149, p. 18 (citing ECF Doc. 139-1, p. 35).)  Additionally, the undersigned observes that Ravin did not initially object to these RFAs on the basis that the issues presented in them were untimely raised or not properly raised in invalidity contentions, as it did with RFA Nos. 72-77, 79-93.  (ECF Doc. 134, p. 16; ECF Doc. 119-7.)  Given the foregoing and the generally broad scope of

discovery under the Federal Rules of Civil Procedure, *Lewis*, 135 F.3d at 402, the undersigned

finds that withdrawal of RFA Nos. 16, 17, 20-71, 78, 96-101, and 103-106 as requested by Ravin

in its supplemental brief is not warranted.[7]

Based on the foregoing, TenPoint's Motion is **DENIED** as to RFA Nos. 79-93.  The

undersigned addresses below the sufficiency of Ravin's answers/objections to the remaining

RFAs in dispute (RFA Nos. 1-18, 20-78, 96-101, 103-106).[8]

### 4.      RFA Nos. 1-15

RFA Nos. 1-15 consist of a series of RFAs requesting that Ravin admit that it "believed

on or before [the indicated date], that TenPoint infringed one or more of Ravin's patents."  (ECF

Doc. 119-6, pp. 5-6.)  Ravin asserted various objections to these RFAs, stating:

> In addition to its General Objections, which are incorporated herein by reference,
> Ravin objects to this Request to the extent it seeks information that is protected
> from disclosure by the attorney-client privilege, work product immunity, common
> interest privilege, and/or other applicable privilege or immunity. Ravin objects to
> this Request to the extent it seeks information that is not relevant to the parties'
> claims or defenses because the phrase "one or more of Ravin's patents"
> encompasses patents not at issue in this case. Ravin objects to this Request to the
> extent the phrase "believed" is vague and ambiguous. Ravin objects to this
> Request as compound and consisting of subparts constituting more than one
> request because it seeks information regarding "one or more of Ravin's patents,"
> which given the size of Ravin's patent portfolio, means that this Request is also
> overly broad, unduly burdensome, oppressive, and irrelevant. Ravin objects to this
> Request to the extent it is duplicative of TenPoint's Interrogatory No. 13 . . .

(ECF Doc. 119-7, pp. 5-18.)  Ravin also objects that the RFAs starting with RFA No. 2 are

duplicative of the preceding RFAs.  (*Id*.)  After asserting its specific objections, Ravin provided a

qualified admission with specific details as to when it believes that TenPoint began infringing the

Patents-in-suit that it had issued as of the stated time.  (*Id*.)

---

[7] This determination likewise applies to Ravin's supplemental arguments as to RFP Nos. 41, 50, and 52
(ECF Doc. 152, p. 3) but does not alter the undersigned's earlier findings as to those RFPs.

[8] The undersigned's findings and rulings should not be interpreted as an implied finding that a particular
objection was unsupported or invalid unless expressly stated as such in this opinion and order.

TenPoint challenges Ravin's objections, including the objection that the requests are compound or consist of subparts constituting more than one request because it seeks information regarding one or more of Ravin's patents.  (ECF Doc. 132, pp. 14-16.)  More particularly, TenPoint asserts: "RFAs 1-15 do not require a breakdown of which patents Ravin believed TenPoint infringed on a certain date; rather, if Ravin believed that TenPoint infringed *any* of its patents on or before a specific date, it can simply admit the request (and all those with later specified dates)."  (*Id*. at p. 16 (emphasis in original).)

In its opposition brief, Ravin contends that "RFA Nos. 1-15, while duplicative of Interrogatory No. 13, appear to be part of TenPoint's misguided laches defense. *See SCA Hygiene*, 580 U.S. at 346. As drafted, Ravin has fairly admitted what it can and otherwise denied the Requests as explained."  (ECF Doc. 134, p. 15.)

This Court has substantial discretion in assessing the propriety of TenPoint's RFAs and the sufficiency of Ravin's responses. *Stephenson*, 2021 WL 681403.  Rule 36 "is essentially intended to facilitate proof at trials by obviating the need to adduce testimony or documents as to matters that are really not in controversy," *Petroff-Kline*, 557 F.3d at 293.  A request for an admission under Rule 36, "must be separately stated," *see* Fed. R. Civ. P. 36(a)(2), and must also be phrased in a simple and direct manner so that the request in most instances can be "answered with a simple admit or deny without an explanation."  *Stephenson*, 2021 WL 681403, at *3. Thus, a party is "not required to admit or deny requests that consist of statements that are vague or ambiguous."  *See* 7 Moore's Federal Practice § 36.10[6] (2024); *see also Stephenson*, 2021 WL 681403, at *4 (internal citations and quotations omitted).  As the movant, TenPoint has the burden of demonstrating that Ravin's answers or objections were insufficient.  *Heid*, 2022 WL 883768, at *3.

The undersigned finds that Ravin properly objected to the requests for admissions in RFA Nos. 1-15, which ask Ravin to admit a statement as to "one or more of [its] patents."  The requests are overly broad, vague, ambiguous, and not asked in a simple and direct manner. Asking for an admission regarding "one or more" patents does not "facilitate [a] clear and succinct response[]," *Exp. Dev. Canada*, 2020 WL 13577497, at *2, and as phrased, the requests would not likely obviate the need to adduce testimony or proof at trial on "matters that are really not in controversy."  *Petroff-Kline*, 557 F.3d at 293.  Additionally, the undersigned finds that the requests "are primarily crafted for purposes of discovery rather than . . . to eliminate the necessity of proving facts that are not in substantial dispute." *Cogent Sols. Grp., LLC,* 2013 WL 12121522, at *3.

Even if the admissions were not objectionable as to form, Ravin answered the admissions with an explanation that is proper and permitted.  *See* Fed. R. Civ. P. 36(a)(4); *see also Stephenson*, 2021 WL 681403, at *3 (indicating that "qualifications or explanations for the purpose of clarifying a response are permitted") (internal quotations and citations omitted). Given the foregoing, the undersigned concludes that TenPoint has not met its burden to demonstrate that Ravin's objections or answers as to RFA Nos. 1-15 are insufficient. Accordingly, TenPoint's Motion as to RFA Nos. 1-15 is **DENIED**.

### 5.    RFA Nos. 17-18

RFA Nos. 17-18 seek admissions as to whether patent counsel conducted a patent availability search or conducted a state-of-the-art search for at least one invention disclosed in the Patents-in-Suit.  (ECF Doc. 119-6, p. 7.)  Ravin raised objections to these requests for various reasons, including: attorney-client privilege, work product immunity, common interest privilege, and/or other applicable privilege or immunity; the phrases "patent availability" and

"invention" are vague and ambiguous; the requests fail to describe the requested information with reasonable particularity; the requests are compound and consist of subparts constituting more than one request because they seek information about each of the six Patents-in-Suit and because the Patents-in-Suit claim multiple inventions; the requests are overly broad and unduly burdensome.  (ECF Doc. 119-7, pp. 19-20.)  Ravin then denies the RFAs on the basis that, "at a minimum," they "fail to separately state each matter, and [the] Request[s] seek[] information protected from disclosure by the attorney-client privilege."  (*Id.*)

TenPoint challenges Ravin's objections, asserting that RFA Nos. 17-18 "simply ask if *any* search was conducted for the Patents-in-Suit; they do not require a patent-by-patent or claim-by-claim itemization."  (ECF Doc. 132, p. 16 (emphasis in original).)  The undersigned finds that Ravin's objections based on the requests failing to separately state each matter and being overly broad are valid.  Asking for an admission regarding an unidentified invention in an unspecified patent does not "facilitate [a] clear and succinct response[]," *Exp. Dev. Canada*, 2020 WL 13577497, at *2, and as phrased, the requests would not likely obviate the need to adduce testimony or proof at trial on "matters that are really not in controversy."  *Petroff-Kline*, 557 F.3d at 293.  Additionally, the undersigned finds that the requests "are primarily crafted for purposes of discovery rather than . . . to eliminate the necessity of proving facts that are not in substantial dispute."  *Cogent Sols. Grp., LLC*, 2013 WL 12121522, at *3.  Accordingly, TenPoint's Motion as to RFA Nos. 17-18 is **DENIED**.

6.      **RFA Nos. 20-23, 26-27, 30-31, 34-35, 38-39, 42-43**

RFA Nos. 20-23, 26-27, 30-31, 34-35, 38-39, 42-43 seek admissions as to whether Karl Schwappach[9] conducted patent availability searches or conducted state-of-the-art searches for at

---

[9] In answer to RFA No. 19, Ravin admitted that "patent prosecution counsel for Ravin at the time of Ravin's inception as an LLC was Karl Schwappach."  (ECF Doc. 119-7, p. 20.)

least one invention disclosed in the Patents-in-Suit or whether Karl Schwappach conducted patent availability searches or conducted state-of-the-art searches for at least one invention disclosed in certain identified patent applications prior to filing the applications.  (ECF Doc. 119-6.)  Ravin's objections as to these RFAs are substantially the same as those lodged as to RFA Nos. 17-18 and Ravin denied the RFAs because, "at a minimum," they "fail[ed] to separately state each matter, and [the] Request[s] seek[] information protected from disclosure by the attorney-client privilege."  (ECF Doc. 119-7, pp. 20-21, 24-25, 26-27, 28-30, 31-32, 33-34.)

For the reasons explained above in connection with RFA Nos. 17-18, the undersigned finds that Ravin's objections that the requests fail to separately state each matter and are overly broad are valid, and finds Ravin's response sufficient.  Accordingly, TenPoint's Motion as to RFA Nos. 20-23, 26-27, 30-31, 34-35, 38-39, 42-43 is **DENIED**.

### 7.    RFA Nos. 24-25, 28-29, 32-33, 36-37, 40-41, 44-45

RFA Nos. 24-25, 28-29, 32-33, 36-37, 40-41, 44-45 seek admissions as to whether Karl Schwappach conducted patent availability or state-of-the-art searches for helical power cable journals prior to filing specific identified patent applications.  (ECF Doc. 119-6.)  Ravin raised objections to these requests for various reasons, including: attorney-client privilege, work product immunity, common interest privilege, and/or other applicable privilege or immunity; the phrase "state-of-the-art" is vague and ambiguous; the requests fail to describe the requested information with reasonable particularity; the phrase "helical power cable journals" calls for a premature expert opinion; and the phrase "helical power cable journals" is subject to claim construction and no claim construction order has been entered by the Court.[10]  (ECF Doc. 119-7, pp. 23-24, 25-26, 27-28, 30-31, 32-33, 34-36.)  Ravin then denied the RFAs on the basis that, "at

---

[10] With the Court having entered its claim construction order (ECF Doc. 148), this objection is moot.

a minimum," they "seek[] information protected from disclosure by the attorney-client privilege." (*Id.*)

These RFAs are more specific than RFA Nos. 17-18, 20-23, 26-27, 30-31, 34-35, 38-39, 42-43, 46-49, 52-53, 56-57, 60-61, 64-65, 68-69, since each RFA pertains to an action taken prior to the filing of a specific patent application.  Thus, the undersigned find Ravin's objection that the requests fail to describe the requested information with reasonable particularity is not persuasive.  The undersigned also finds that Ravin has not sufficiently demonstrated that the use of the phrase "state-of-the-art" makes these RFAs vague or ambiguous.  As to Ravin's claim that these RFAs call for premature expert testimony, Ravin presents only general arguments (ECF Doc. 134, p. 16) and does not directly address TenPoint's contention that a party may not object to discovery on the grounds that it is premature, except in limited instances, which are not applicable (ECF Doc. 132, p. 14).  Having concluded that these objections are insufficient, the undersigned turns to Ravin's objection that these RFAs seek information protected by attorney-client privilege, work product immunity, or other privileges.

The burden of establishing protection based on attorney-client privilege and work product immunity rests with Ravin.  *See United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009); *Embs v. Jordan Outdoor Enterprises Ltd.*, No. 2:03-CV-895, 2005 WL 8162598, at *4 (S.D. Ohio Apr. 4, 2005); *Corbis Corp. v. Starr*, 719 F. Supp. 2d 843, 846 (N.D. Ohio 2010).  Although Ravin bears this burden, the undersigned finds its privilege arguments to be conclusory and underdeveloped.  (ECF Doc. 134, p. 16.)  The undersigned therefore finds Ravin has not presented the Court with sufficient grounds to conclude that Ravin should be excused from answering theses RFAs based on attorney-client privilege or work product immunity.

43

Accordingly, for the reasons explained, TenPoint's Motion as to RFA Nos. 24-25, 28-29, 32-33, 36-37, 40-41, 44-45 is **GRANTED**.  Ravin shall supplement its responses to RFA Nos. 24-25, 28-29, 32-33, 36-37, 40-41, 44-45 within two weeks.  To the extent that Ravin's answers are qualified, the answer should specify which part is admitted and qualify or deny the rest.  *See* Fed. R. Civ. P. 36(a)(4); *see also Stephenson*, 2021 WL 681403, at *3 (indicating that "qualifications or explanations for the purpose of clarifying a response are permitted").

**8.      RFA Nos. 46-49, 52-53, 56-57, 60-61, 64-65, 68-69**

RFA Nos. 46-49, 52-53, 56-57, 60-61, 64-65, 68-69 seek admissions as to whether Ravin conducted patent availability searches or conducted state-of-the-art searches for at least one invention disclosed in the Patents-in-Suit or Ravin conducted patent availability searches or conducted state-of-the-art searches for at least one invention disclosed in certain identified patent applications prior to filing the applications.  (ECF Doc. 119-6.)  Ravin's objections as to these RFAs are substantially the same as those lodged as to RFA Nos. 17-18, 20-23, 26-27, 30-31, 34-35, 38-39, 42-43, adding also that the requests are objectionable on the basis that they are duplicative of earlier RFAs.  (ECF Doc. 119-7, pp. 36-39, 40-41, 42-43, 45-46, 47-48, 50-51.)  Ravin denies the RFAs because, "at a minimum," they "fail to separately state each matter, and [the] Request[s] seek[] information protected from disclosure by the attorney-client privilege." (*Id*.)

For the reasons explained above in connection with RFA Nos. 17-18, 20-23, 26-27, 30-31, 34-35, 38-39, 42-43, the undersigned finds that Ravin's objections to the requests for failing to separately state each matter and being overly broad are valid and finds its response sufficient.  Accordingly, TenPoint's Motion as to RFA Nos. 46-49, 52-53, 56-57, 60-61, 64-65, 68-69 is **DENIED**.

9.      **RFA Nos. 50-51, 54-55, 58-59, 62-63, 66-67, 70-71**

RFA Nos. 50-51, 54-55, 58-59, 62-63, 66-67, 70-71 seek admissions as to whether Ravin conducted patent availability or state-of-the-art searches for helical power cable journals prior to filing specific identified patent applications.  (ECF Doc. 119-6.)  Ravin raises substantially similar objections to those raised in response RFA Nos. 24-25, 28-29, 32-33, 36-37, 40-41, 44-45, adding an objection that the RFAs are duplicative of earlier RFAs.  (ECF 119-7, pp. 38-40, 41-42, 44-45, 46-47, 49-50, 51-52.)  Ravin also denies the RFAs because, "at a minimum," they "seek[] information protected from disclosure by the attorney-client privilege."  (*Id.*)

For the reasons explained above in connection with RFA Nos. 24-25, 28-29, 32-33, 36-37, 40-41, 44-45, TenPoint's Motion as to RFA Nos. 50-51, 54-55, 58-59, 62-63, 66-67, 70-71 is **GRANTED**.[11]  Ravin shall supplement its responses to RFA Nos. 50-51, 54-55, 58-59, 62-63, 66-67, 70-71 within two weeks.  To the extent that Ravin's answers are qualified, the answer should specify which part is admitted and qualify or deny the rest.  *See* Fed. R. Civ. P. 36(a)(4); *see also Stephenson*, 2021 WL 681403, at *3 (indicating that "qualifications or explanations for the purpose of clarifying a response are permitted").

10.      **RFA Nos. 72-76**

RFA Nos. 72-76 are similar in that they seek admissions as to whether U.S. Patent Application Publication No. US 2011/0308508 discloses that power cables are attached to a crossbow in a particular manner. (ECF Doc. 119-6, p. 13.)  Ravin raises objections to these requests for various reasons, including its contentions that the requests: seek premature expert testimony as to whether "U.S. Patent Application Publication No. US 2011/0308508 discloses power cables that attach" in the manner stated in the RFA; fail to describe the requested

---

[11] The undersigned observes that the assertion of privilege as to these RFAs is even less clear than the assertion of privilege as to RFA Nos.  24-25, 28-29, 32-33, 36-37, 40-41, 44-45, since these RFAs are directed at searches conducted by Ravin itself rather than its counsel.

information with reasonable particularity as to what and/or where U.S. Patent Application Publication No. US 2011/0308508 purportedly "discloses power cables that attach" in the manner stated in the RFA; and are irrelevant to any parties' claims or defenses because TenPoint did not timely disclose U.S. Patent Application Publication No. US 2011/0308508 in its Preliminary Invalidity Contentions pursuant to LPR 1-8(b) and because TenPoint improperly seeks to amend its invalidity contentions to include U.S. Patent Application Publication No. US 2011/0308508 without seeking leave of the Court pursuant to LPR 1-12. (ECF Doc. 119-7, pp. 53-56.) Ravin then denies the requests because, "at a minimum," they "prematurely seek[] expert testimony about a matter that is irrelevant to any claim or defense in this case." (*Id.*)

Given the generally broad scope of discovery, the undersigned finds that information sought in these requests may be relevant to a claim or defense. However, in order to "facilitate clear and succinct responses, the facts stated within the request must be singularly, specifically, and carefully detailed." *Exp. Dev. Canada*, 2020 WL 13577497, at *2. Here, the requests are not articulated with reasonable particularity; they use broad terminology to describe the information sought without providing a clear explanation as to what portion or elements of the specified patent application are being referenced with that broad language. Additionally, the requests would not likely obviate the need to adduce testimony or proof at trial on "matters that are really not in controversy." *Petroff-Kline*, 557 F.3d at 293. Accordingly, the undersigned finds Ravin's response sufficient and TenPoint's Motion as to RFA Nos. 72-76 is **DENIED**.

### 11.    RFA No. 77

RFA No. 77 requests that Ravin "[a]dmit that U.S. Patent Application Publication No. US 2011/0308508 is prior art to the Patents-in-Suit." (ECF Doc. 119-6, p. 14.) Ravin objects to this request for various reasons, including its contentions that the request: seeks premature expert

testimony as to whether "U.S. Patent Application Publication No. US 2011/0308508 is prior art

to the Patents-in-Suit"; is compound and consists of subparts constituting more than one request

because it seeks information about each of the six Patents-in-Suit; and is irrelevant to any

parties' claims or defenses because TenPoint did not timely disclose U.S. Patent Application

Publication No. US 2011/0308508 in its Preliminary Invalidity Contentions pursuant to LPR 1-

8(b) and because TenPoint improperly seeks to amend its invalidity contentions to include U.S.

Patent Application Publication No. US 2011/0308508 without seeking leave of the Court

pursuant to LPR 1-12.  (ECF Doc. 119-7, p. 56.)  Ravin then denies the request because, "at a

minimum," it "fail[s] to separately state each matter, and . . . seeks expert testimony about a

matter that is irrelevant to any claim or defense in [the] case."  (*Id*.)

The undersigned finds that Ravin's has raised a valid objection because the request seeks

information jointly as to all six Patents-in-Suit, rather than identifying a specific patent to which

each request is directed.  As indicated earlier, in order to "facilitate clear and succinct responses,

the facts stated within the request must be singularly, specifically, and carefully detailed."  *Exp.*

*Dev. Canada*, 2020 WL 13577497, at *2.  This RFA fails to do so.  Additionally, the requests

would not likely obviate the need to adduce testimony or proof at trial on "matters that are really

not in controversy."  *Petroff-Kline*, 557 F.3d at 293.  Accordingly, the undersigned finds Ravin's

response sufficient and TenPoint's Motion as to RFA Nos. 77 is **DENIED**.

### 12.     RFA No. 78

RFA No. 78 asks Ravin to "[a]dmit that the '015 Patent does not disclose two helical

power cable journals (an upper one and a lower one) on a cam, one on each side of a draw string

journal on the cam."  (ECF Doc. 119-6, p. 14.)  Ravin objects to this request to extent the phrase

"helical power cable journal" calls for premature expert opinion and to the extent the phrase

"helical power cable journal" is subject to claim construction when no claim construction order has been entered by the Court.  (ECF Doc. 119-7, p. 57.)  Ravin then denies the request, "because, at a minimum, it prematurely seeks expert testimony."  (*Id*.)

Ravin's objection based on claim construction not being complete is now moot.  As to its claim that the RFA calls for premature expert testimony, Ravin presents only general arguments (ECF Doc. 134, p. 16) and does not specifically address TenPoint's contention that a party may not object to discovery on the grounds that it is premature, except in limited instances, which are not applicable.  (ECF Doc. 132, p. 14).  Given the foregoing, the undersigned concludes that Ravin has not adequately supported its objection to RFA No. 78.

Accordingly, TenPoint's Motion as to RFA No. 78 is **GRANTED**.  Ravin shall supplement its response to RFA No. 78 within two weeks.  To the extent that Ravin's answer is qualified, the answer should specify which part is admitted and qualify or deny the rest.  *See* Fed. R. Civ. P. 36(a)(4); *see also Stephenson*, 2021 WL 681403, at *3 (indicating that "qualifications or explanations for the purpose of clarifying a response are permitted").

### 13.     RFA Nos. 96-101

RFA Nos. 96-101 seek admissions as to whether, during the pendency of a particular patent application, Ravin knew of non-cumulative prior art that was not disclosed during the prosecution of that particular patent application.  (ECF Doc. 119-6, p. 16.)  Ravin raised similar objections to each of these RFAs, including that: the requests seek information that is protected from disclosure by the attorney-client privilege, work product immunity, common interest privilege, and/or other applicable privilege or immunity; the phrase "pendency" is vague and ambiguous; the requests fail to describe the requested information with reasonable particularity; the requests mischaracterize the prosecution history of the identified patent, noting that the

prosecution history speaks for itself; and the requests are duplicative of RFA No. 95.  (ECF Doc. 119-7, pp. 68-72.)  Ravin then denies the requests because, "at a minimum," the requests "seek[] information protected from disclosure by the attorney-client privilege."  (*Id*.)

A party is "not required to admit or deny requests that consist of statements that are vague or ambiguous."  *See* 7 Moore's Federal Practice § 36.10[6] (2024); *see also Stephenson*, 2021 WL 681403, at *4 (internal citations and quotations omitted).  The undersigned finds Ravin has raised a valid objection based on vagueness. Accordingly, TenPoint's Motion as to RFA Nos. 96-101 is **DENIED**.

14.    **RFA Nos. 103-106**

RFA Nos. 103-106 seek admissions as to whether a helical power cable journal on a crossbow (RFA No. 103), helical power cable journal on a compound bow (RFA No. 104), helical power cable journals located above and below a bow string groove on a cam (RFA No. 105), and power cables attached to a center rail (RFA No. 106) were disclosed in the prior art before the earliest filing date of any of the Patents-in-Suit.  (ECF Doc. 119-6, p. 17.)  Ravin raised similar objections to each of these requests, including: that the phrase "helical power cable journal" calls for premature expert opinion; the requests fail to describe the requested information with reasonable particularity, to the extent the phrase "helical power cable journal" is subject to claim construction and no claim construction order has been entered by the Court; the requests are compound and consist of "subparts constituting more than one request because [they] seek[] information about each of the six Patents-in-Suit."  (ECF Doc. 119-7, pp. 72-74.)  Ravin then denies the requests because, "at a minimum," they "fail to separately state each matter."  (*Id*.)

The undersigned finds that Ravin's objections that the requests fail to separately state each matter is valid.  The requests as constructed do not "facilitate [a] clear and succinct response[]," *Exp. Dev. Canada*, 2020 WL 13577497, at *2, and as phrased, the requests would not likely obviate the need to adduce testimony or proof at trial on "matters that are really not in controversy."  *Petroff-Kline*, 557 F.3d at 293.  Additionally, the undersigned finds that the requests are "are primarily crafted for purposes of discovery rather than . . . to eliminate the necessity of proving facts that are not in substantial dispute."  *Cogent Sols. Grp., LLC*, 2013 WL 12121522, at *3.  Accordingly, TenPoint's Motion as to RFA Nos. 103-106 is **DENIED**.

## IV.    Conclusion

For the reasons explained herein, TenPoint's Motion (ECF Doc. 132) is **GRANTED in part** and **DENIED in part**.

Dated: March 19, 2024

*/s/ Amanda M. Knapp*

AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE