**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RAVIN CROSSBOWS, LLC, | ) | CASE NO. 5:23-cv-598 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| HUNTER'S MANUFACTURING | ) | **MEMORANDUM OPINION** |
| COMPANY, INC. d/b/a TENPOINT | ) | **AND ORDER** |
| CROSSBOW TECHNOLOGIES, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion (Doc. No. 156 (Motion for Reconsideration)) of the defendant, Hunter's Manufacturing Company, Inc. d/b/a/ TenPoint Crossbow Technologies ("TenPoint"), for reconsideration of the Court's order (Doc. No. 149 (Memorandum Opinion and Order on Motion to Strike)) striking portions of TenPoint's supplemental invalidity contentions and inequitable conduct claims. Plaintiff Ravin Crossbows, LLC ("Ravin") filed a brief in opposition. (Doc. No. 175 (Brief in Opposition to Motion for Reconsideration).) For the reasons set forth herein, TenPoint's motion for reconsideration is DENIED.

**I.  BACKGROUND**

The Court discussed the facts of this case at length, both in its *Markman* order (Doc. No. 148 (*Markman* Order)) and in its memorandum opinion and order (Doc. No. 149) granting in part Ravin's motion to strike TenPoint's supplemental invalidity contentions (the "first opinion"). In summary, this case was originally brought in the District of Nevada on December 17, 2021. (Doc. No. 1 (Complaint).) From the outset, the parties disputed the scheduling order and disclosure requirements. (*See generally* Doc. No. 34 (Disputed Discovery Plan); *see also* Doc. No. 139-2

(Deficiency Letter), at 3.[1]) The parties proposed modifying the District of Nevada's patent rules to allow for amendments to initial contentions, but this proposed modification was not adopted by that court. (*Compare* Doc. No. 34, at 6–7 *with* Doc. No. 36 (Scheduling Order).)

Ravin served its initial infringement contentions on May 23, 2022. (Doc. No. 89-6 (Infringement Contentions).) On July 7, 2022, TenPoint served initial contentions that challenged only six of the one-hundred and three claims at issue, arguing that they were anticipated by US Patent No. 20120125302 ("Stanziale I"). (*See generally* Doc. No. 139-1 (LPR 1-8 Contentions).) Fifteen months later, after the case was transferred to this Court and in the midst of claim construction briefing, TenPoint served Ravin with supplemental contentions introducing thirty-three new invalidity claims under anticipation or obviousness theories, and new allegations of inequitable conduct. (Doc. No. 141-1 (Supplemental Contentions).) The Court discussed TenPoint's supplemental contentions, and Ravin's opposition to the same, during a telephonic status conference on November 8, 2023. (Minutes of Proceedings [non-document], Nov. 8, 2023.) The parties briefed the issue at the Court's direction. (*Id.*; Doc. No. 139 (Brief in Support of Motion to Strike); Doc. No. 141 (Brief Regarding Supplemental Invalidity Contentions).)

On March 6, 2024, the Court granted Ravin's motion to strike as to claims based on newly referenced prior art, denied the motion as to claims based on Stanziale I, and struck TenPoint's new allegations of inequitable conduct claims as improperly pled. (Doc. No. 149, at 18–21.) TenPoint filed a motion for reconsideration on March 28, 2024 (Doc. No. 156.), which Ravin opposed. (Doc. No. 175.) The motion is now ripe for review.

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

## II.  STANDARD OF REVIEW

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it serves a legitimate and valuable role in certain situations. *Nat'l Union Fire Ins. Co. v. Cont'l Ill. Corp.*, 116 F.R.D. 252, 253 (N.D. Ill. 1987) (citing *Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Such a motion is typically treated as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). *McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 382 (6th Cir. 1991) (citing *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979)).

The purpose of a motion to alter or amend judgment is to request "reconsideration of matters properly encompassed in a decision on the merits." *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989) (quoting *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 451, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982)). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994)). In other words, Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided. *See Dana Corp. v. United States*, 764 F. Supp. 482, 489 (N.D. Ohio 1991) (citation omitted).

"In this circuit, a district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Bunn v. Navistar, Inc.*, 797 F. App'x 247, 256 (6th Cir. 2020)

(quoting *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551–52 (6th Cir. 2012)) (further citation omitted). When deciding whether to grant a Rule 59(e) motion, a district court must consider the "interest of protecting the finality of judgments and the expeditious termination of litigation," *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615–16 (6th Cir. 2010) (citation omitted). A motion for reconsideration must demonstrate to the court why it should reconsider its decision and set forth strongly convincing facts or law that would induce it to reverse its prior decision. *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988).

### III. DISCUSSION

#### A. TenPoint was Required to Supplement its Contentions in a Timely Manner.

TenPoint first argues that the Court improperly applied the Rule 26(e)(1)(A) timeliness standard to its supplemental contentions. (Doc. No. 156, at 4–5.) The Court explained the link between the Local Patent Rules and Federal Rule 26 in the first opinion, finding that contentions in patent cases are akin to interrogatories in civil cases, and are therefore subject to the requirements of Rule 26(e). (Doc. No. 149, at 6–7 (citing *Datatrak Int'l, Inc. v. Medidata Sols., Inc.*, No. 1:11-cv-458, 2015 WL 12734894, at *3 (N.D. Ohio July 10, 2015); *SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 754–55 (E.D. Mich. 2008)).) TenPoint does not challenge the Court's conclusion that Rule 26(e) applies. Instead, it advances several theories to explain why the timeliness requirement should not apply to its late disclosures in this case. Each is without merit.

At the outset, L.P.R. 2.3(c) provides that "Federal Rule of Civil Procedure 26(e)'s requirements concerning the supplementation of disclosure and discovery responses apply to all disclosures required under the Local Patent Rules." Nevertheless, TenPoint contends that the Court, through L.P.R. 3.10(a), eliminated Rule 26(e)(1)(A)'s timeliness requirement as it applies

to invalidity contentions. (Doc. No. 156, at 4–5.) In doing so, TenPoint analogizes to another Federal Rule of Civil Procedure, Rule 12(a)(4)(a), which allows the Court to modify the answer period by order. (*Id.*) TenPoint believes that the Court's initial standing order (Doc. No. 81 (Initial Standing Order), at 8) directs parties to file an answer while a motion to dismiss is pending, thus setting an alternate time than that contemplated by the Rule itself. (*Id.*)

This analogy relies on a misunderstanding of the Court's standing order. In *Joseph v. Advanced Transp., Inc.*, this Court explained that its initial standing order requires only a timely answer under Rule 12(a)(4)(A), including an answer filed within fourteen days of the Court's ruling on a motion to dismiss. *See Joseph v. Advanced Transp., Inc.*, No. 5:23-cv-1670, slip op. at 3 (N.D. Ohio Oct. 10, 2023). But even if the initial standing order did require answers to be filed while a motion to dismiss was pending, the analogy would still fail. As Ravin explains, L.P.R. 3.10(a) "only discusses that responses may be amended without leave of court." (Doc. No. 175, at 8.) It does not "specifically modify the requirement set forth in rule 26(e)(1)(A) that supplementation must be made in a timely manner." (*Id.* (quotation marks omitted).) Nor could it. While Rule 26(e)(1)(B) permits the Court to "direct supplementation or correction beyond what the rule itself commands[,]" it does not invite courts to "relax or eliminate supplementation obligations imposed by the rule" altogether. 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2049.1; *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-01570, 2022 WL 17079052, at *4 (S.D.N.Y. Nov. 7, 2022) ("Rule 26(e)(1)(B) permits courts to extend a party's duty to supplement beyond that required by the Rule itself.").

TenPoint's argument that the Court incorrectly imposed a good cause requirement to amend initial contentions fares no better. "Good cause" appears nowhere in the first opinion.

5

TenPoint only finds a good cause standard by reference to *O2 Micro Int'l v. Monolithic Power Sys.*, 467 F.3d 1355 (Fed. Cir. 2006), where the United States Court of Appeals for the Federal Circuit found that good cause required a showing of diligence on the part of the movant. (Doc. No. 156, at 5 (citing *O2 Micro*, 467 F.3d at 1364, 1366, 1368).) But *O2 Micro*'s analysis was expressly limited to the good cause requirement found in the Local Patent Rules for the Northern District of California. *O2 Micro*, 467 F.3d at 1362–63; *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1323 n.5 (Fed. Cir. 2016) (distinguishing *O2 Micro*'s interpretation of the Northern District of California's local patent rules from an interpretation of a judge's standing patent rules); *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1015 (Fed. Cir. 2015) (explaining that good cause requires both diligence and a lack of prejudice). In fact, *O2 Micro* explicitly likened the good cause standard to that required to amend a scheduling order, which, in the Sixth Circuit, considers multiple factors in addition to diligence, such as potential prejudice to the adverse party. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). TenPoint is therefore incorrect to equate the good cause requirement found in L.P.R. 3.10(a) with Rule 26(e)(1)(A)'s timeliness requirement.

Finally, any reliance TenPoint placed in its analysis of other districts' patent rules was misplaced. The Court did not apply a novel interpretation of the Local Patent Rules. Indeed, numerous other courts have applied the Rule 26 timeliness standard to supplemental contentions. *See, e.g.*, *SPX Corp.*, 574 F. Supp. 2d at 754 ("[T]he supplementation provisions of Rule 26(e) . . . govern the disclosure of other prior art."); *Beacon Navigation GmbH v. Bayerische Motoren Werke AG*, No. 2:13-cv-11410, 2023 WL 8981689, at *4–5 (E.D. Mich. Dec. 28, 2023) (finding that Rule 26 required the plaintiff to timely supplement infringement contentions); *Simo Holdings*

6

*Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508, 509–510 (S.D.N.Y. 2019) (same); *Cirba Inc. v. VMWare, Inc.*, No. 19-cv-742, 2021 WL 7209447, at *4 (D. Del. Dec. 14, 2021) (same).

### B. TenPoint's Supplement was Untimely.

TenPoint next argues that, even if Rule 26(e)(1)(A) does apply, its disclosures were still timely because TenPoint worked diligently to supplement its invalidity contentions over the preceding fifteen months. (Doc. No. 156, at 6–14.) Ravin counters that TenPoint knew of the prior art it asserted well in advance of its supplement, and that "complaints of too much work to do in too little time are not valid excuses." (Doc. No. 175, at 5–7.) In support of its position, TenPoint attached a chart detailing the total hours spent on this case. (Doc. No. 156-5 (Chart of Hours). This is largely a rehashing of arguments TenPoint made in its brief in opposition to the motion to strike and is therefore an improper argument on a motion to reconsider. *See McConocha*, 930 F. Supp. at 1184 (quoting *In re August, 1993 Regular Grand Jury*, 845 F. Supp. at 1408).

Even if this argument were properly before the Court, it fails to change the analysis. TenPoint's submissions show that three attorneys spent 734 hours between May 2022 and October 2023 preparing invalidity contentions. (Doc. No. 156, at 13.) By the Court's calculation, this means that Tenpoint spent approximately 3.4 hours per attorney per week preparing invalidity contentions. This expenditure of resources stands in contrast to the nearly 500 hours that TenPoint dedicated to *inter partes* review over the course of just three months. (*See* Doc. No. 156-5.) It was not, as TenPoint argues (Doc. No. 156, at 8), impossible to supplement its disclosures in a timely manner. Rather, as Ravin explains, TenPoint's failure to supplement its contentions in a timely manner was the result of strategic decisions to pursue other activities. (Doc. No. 175, at 7.) Such

7

strategic decisions do not excuse untimely supplements, and do not form the basis for a motion to reconsider. *See McCoy v. Bd. of Educ., Columbus City Sch.*, No. 2:10-cv-298, 2011 WL 3652748, at *2 (S.D. Ohio Aug. 18, 2011) ("Questions of litigation strategy . . . are not of themselves compelling reasons to grant untimely leave to amend."); *see also Sys. Fuels, Inc. v. United States*, 111 Fed. Cl. 381, 383 (2013) ("A party's realization that it elected to pursue the wrong litigation strategy" did not justify failure to comply with a scheduling order) (citation omitted).

More importantly, these arguments do not challenge the Court's conclusion that TenPoint knew that its contentions were incomplete for over fifteen months and did nothing to notify Ravin or the Court of this deficiency. (Doc. No. 149, at 9.) In the interim, the parties briefed for claim construction based on the six claims TenPoint asserted in its first set of contentions. (*See* Doc. No. 175, at 15.) When TenPoint did elect to serve its supplemental contentions, it sought to change the fundamental nature of the case by introducing thirty-three new claims and ten pieces of prior art.

In the first opinion, the Court noted that TenPoint engaged in gamesmanship by "wait[ing] to finalize its contentions until claim construction was fully briefed and it received a covenant not to sue from Ravin[.]" (Doc. No. 149, at 9.) The evidence that TenPoint engaged in gamesmanship has only gotten stronger since the first opinion. In its brief, Ravin attached documents which show that TenPoint was aware of seven of the ten prior art references it disclosed in its supplemental contentions not only since before claim construction began, but since before the onset of this litigation. (*See generally* Doc. No. 175-1 (TenPoint Document).) Permitting TenPoint to introduce thirty-three new claims and ten prior art references in the midst of claim construction, when it knew of that prior art since the outset of this litigation, would only "promote principles of

gamesmanship and deception in which the person who hides the ball most effectively wins the case." *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428–29 (6th Cir. 1996).

As this Court explained, the purpose of permitting amendments to initial contentions is to allow parties to refine their infringement theories as litigation progresses. *Fast Felt Corp. v. Owens Corning Roofing & Asphalt, LLC*, No. 3:14-cv-803, 2017 WL 4876789, at *1 (N.D. Ohio July 26, 2017). The Local Patent Rules do not grant parties license to "spring entirely new theories that potentially disrupt the case schedule" by "withholding information until the last possible moment." *Id.* That is exactly what happened in this instance. TenPoint's late disclosure deprived both Ravin and the Court of the opportunity to meaningfully engage in claim construction. Its strategic choices to allocate its resources to *inter partes* review and additional motion practice do not persuade the Court to ignore TenPoint's lack of diligence in supplementing its contentions.

Finally, as the Court explained, any notice Ravin received from TenPoint's petition for *inter partes* review fell well short of a proper disclosure under L.P.R. 3.5 because it did not provide a chart identifying limitations or the precise grounds for invalidity as applied to the patents at issue in this case. (*See generally* Doc. No. 86-1 (Petition for *Inter Partes* Review).) Because Ravin was left without information that would have been included in a proper disclosure under L.P.R. 3.5, it is incorrect to say that Ravin had knowledge of TenPoint's invalidity positions relative to the prior art provided in TenPoint's supplemental contentions. *See Sjostrand v. Ohio State Univ.*, No. 2:11-cv-462, 2014 WL 4417767, at *2 (finding that the "made known" exception applies where the non-disclosing party received the "functional equivalent" of a proper disclosure).

### C. TenPoint's Untimely Supplement was not Substantially Justified or Harmless.

Finally, TenPoint contends that the Court erred in finding that its late supplements were not harmless or substantially justified under Federal Rule 37(c)(1). (Doc. No. 156, at 14–16.) In the first opinion, the Court found that four out of five factors identified in *Howe v. City of Akron*, 810 F.3d 718 (6th Cir. 2015), weighed against finding TenPoint's untimely disclosures to be substantially justified or harmless. (Doc. No. 149, at 11–18.) TenPoint takes issue with the Court's evaluation of three of the *Howe* factors: disruption to trial, importance of evidence, and the non-disclosing party's explanation for the delay.

#### i. Disruption to Trial

In its first opinion, the Court explained that the potential disruption to trial weighed against finding that the supplement was harmless or substantially justified because the case was already behind schedule, and because adding additional contentions would likely require another round of claim construction, potentially delaying the October 28, 2024, trial. (*Id.* at 13–14.)

TenPoint argues that the Court did not weigh this factor properly because the claim construction briefing schedule, coupled with the large amount of claims initially asserted, made it impossible for TenPoint to supplement its contentions in a timely manner. (Doc. No. 156, at 14–15.) The Court has already explained why it was not impossible for TenPoint to supplement its contentions in a timely manner, pointing to its strategic deployment of resources and dilatory tactics throughout the case. TenPoint does not dispute that its late supplement would likely entail further delay in this case, threatening to delay the trial. Instead, it argues that the Court could engage in a rolling claim construction, issuing multiple rulings as needed. (*Id.* at 16.) While the Court acknowledges that other courts sometimes conduct multiple claim constructions, it also

notes that one purpose of the Local Patent Rules is to limit such circumstances by preventing a "shifting sands approach to claim construction." *O2 Micro*, 467 F.3d at 1364 (citation and quotation marks omitted). The Court found, and reiterates here, that allowing supplemental contentions that introduce new prior art would only facilitate such a "shifting sands" approach.

TenPoint also argues that the Court improperly weighed potential prejudice to Ravin. But Ravin has repeatedly urged this Court to pursue a more expedient timetable, citing prejudice. (*See, e.g.*, Doc. No. 89 (Opposition to Motion to Stay), at 5–9.) The Court did not simply credit Ravin's bare assertion of prejudice, but rather found merit to Ravin's persistent urging of this Court that further delays would be prejudicial. Notwithstanding any prejudice to Ravin, TenPoint's argument still does not challenge the Court's determination that its late supplement threatened to disrupt the trial schedule in a case that had already seen a substantial delay and generous case management schedule. The Court finds no error in its analysis of this factor.

> ii. *Importance of Evidence*

In the first opinion, the Court noted that this factor can often cut both ways. (Doc. No. 149, at 14.) Accordingly, the Court found that the importance of the evidence in this case was neutral. (*Id.*) The evidence was important to TenPoint but allowing the late supplement would prejudice Ravin. (*Id.*) Ample case law exists to support the proposition that the importance of the evidence can, and often does, cut both ways. *See, e.g.*, *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019) (citing *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-cv-150, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017), *objections overruled sub nom. EQT Prod. Co. v. Magnum Hunter Prod. Co.*, No. 5:16-cv-150, 2017 WL 4974782 (E.D. Ky. July 19, 2017)). The Court weighed the evidence in this case and determined the same was true here. But even if this factor

11

favored TenPoint "importance cannot, by itself, save improperly disclosed evidence from being found unjustified or non-harmless." *EQT Prod. Co.*, 2017 WL 2295906, at *5 (citation and quotation marks omitted). Nothing in TenPoint's briefing changes the Court's analysis.

      *iii. Explanation for Delay*

Finally, TenPoint takes issue with the Court's analysis of its explanation for its untimely disclosure. Here, TenPoint offers three explanations for its untimely disclosure, two of which the Court evaluated in the first opinion. (Doc. No. 156, at 16.) First, TenPoint reiterates its argument that Ravin could not unilaterally withdraw from the parties' agreement to allow amendments. (*Id.*) The Court did not find that Ravin had withdrawn from such an agreement; instead, the Court saw no evidence that such an agreement ever existed. (Doc. No. 149, at 14–15.) The District of Nevada did not adopt this agreement, Ravin denied the existence of such an agreement from the outset, and Ravin moved to amend its own contentions. (*Id.*)

As to TenPoint's additional explanations—namely, the alleged impossibility of complying with the timeliness standard, and its reliance on L.P.R. 3.10—the Court has already addressed these contentions elsewhere in this opinion. In short, the Court does not credit the argument that TenPoint was unable to comply with the timeliness standard of Rule 26(e)(1)(A), and any reliance on L.P.R. 3.10 to alleviate TenPoint's obligation to supplement in a timely manner was misplaced.

## IV. CONCLUSION

For all the reasons set forth herein, TenPoint's motion to reconsider (Doc. No. 156) the Court's memorandum opinion and order granting in part Ravin's motion to strike (Doc. No. 149) is DENIED.

**IT IS SO ORDERED**.

Dated: July 1, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**