UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAVIN CROSSBOWS, LLC, | ) | CASE NO. 5:23-cv-598 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| HUNTER'S MANUFACTURING | ) | **AND ORDER** |
| COMPANY, INC. d/b/a TENPOINT | ) | |
| CROSSBOW TECHNOLOGIES, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion (Doc. No. 162 (Motion for Reconsideration)) of the defendant, Hunter's Manufacturing Company, Inc. d/b/a/ TenPoint Crossbow Technologies ("TenPoint"), for partial reconsideration of the magistrate judge's order (Doc. No. 154 (Memorandum Opinion and Order on Motion to Compel)) granting in part the defendant's Motion to Compel Discovery. (Doc. No. 132.) Plaintiff Ravin Crossbows, LLC ("Ravin") filed a brief in opposition. (Doc. No. 170 (Brief in Opposition to Motion for Reconsideration).) TenPoint filed a reply. (Doc. No. 172 (Reply).) For the reasons set forth herein, TenPoint's motion for reconsideration is **DENIED**.

**I.      BACKGROUND**

The Court has detailed the facts of this case extensively in multiple prior orders. The parties are embroiled in a multi-year dispute, spanning two districts and two separate claim constructions, in which the plaintiff accuses the defendant of infringing several patents disclosing various

crossbow configurations. (*See* Doc. No. 149 (Memorandum Opinion and Order Granting in Part Plaintiff's Motion to Strike Supplemental Invalidity Contentions), at 1–5.[1])

On September 8, 2023, TenPoint notified the Court of a discovery dispute, pursuant to Local Rule 37.1. (Doc. No. 111 (Letter Re: Discovery Dispute).) The Court referred the dispute to the magistrate judge for resolution on September 12, 2023. (Doc. No. 113 (Referral Order).) The parties attempted to resolve the dispute without further intervention for approximately one month. (*See* Doc. No. 114 (Order to Meet and Confer).) On October 24, 2023, with the permission of the magistrate judge, TenPoint filed a motion to compel discovery. (Doc. No. 130 (Minute Order), at 1; Doc. No. 132 (Motion to Compel).)

The motion to compel discovery identified 37 disputed requests for productions ("RFPs") and 102 disputed requests for admissions ("RFAs") for resolution by the Court. (Doc. No. 132, at 2, 13.) Ravin responded with a brief in opposition to the motion to compel. (Doc. No. 134 (Opposition to Motion to Compel).) On March 19, 2024, the magistrate judge issued an order granting in part and denying in part the motion to compel. (Doc. No. 154.) In the time between the motion to compel and the magistrate judge's order, the parties briefed for claim construction, filed a second discovery dispute, and participated in a claim construction hearing. The Court also issued orders as to both the claim construction and the second discovery dispute. (Doc. No. 148 (Memorandum Opinion and Order Regarding Claim Construction); Doc. No. 149.)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

TenPoint filed a motion for reconsideration of the magistrate judge's memorandum opinion and order on April 2, 2024.[2] (Doc. No. 162.) TenPoint's motion for reconsideration is limited to challenging the magistrate judge's determination regarding RFP 120, and RFAs 97, 98, 99, and 101. (*See generally id.*) Ravin filed a brief in opposition to the motion to reconsider on April 16, 2024. (Doc. No. 170.) TenPoint filed a reply on April 23, 2024. (Doc. No. 172.) The motion is now ripe for review.

## II. STANDARD

> When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review. 28 U.S.C. § 636(b)(1)(A). Under this standard, the magistrate judge's determination may be overturned by the district court only if it is 'clearly erroneous or contrary to law.' *Id.* Rule 72(a) of the Federal Rules of Civil Procedure implements Section 636(b)(1)(A).

*Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (emphasis and footnote omitted).

"The 'clearly erroneous' standard of review is a limited one." *Burghardt v. Ryan*, No. 5:19-cv-325, 2020 WL 4350049, at *2 (N.D. Ohio July 29, 2020). "A court may not overturn a ruling just because, if it were the original fact-finder, it would have decided the evidence differently. If there are two plausible views of a matter, then a decision cannot be 'clearly erroneous.'" *Id.* (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). "In reviewing a magistrate judge's decision to determine whether it is 'contrary to law,' a district court is to apply the same standard the Sixth Circuit employs to review a district court's

---

[2] In the section of its motion outlining the applicable law, TenPoint cites *Ohio Harness Horsemen's Ass'n, Inc. v. Northfield Park Assocs., LLC*, 288 F. Supp 3d 823, 830 (N.D. Ohio 2017). (Doc. No. 162, at 2.) In *Ohio Harness*, the defendant moved to reconsider the district judge's previous order granting the defendant's request for a preliminary injunction. 288 F. Supp 3d at 826–28. There, the Court invoked its "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Id.* at 830. Here, TenPoint moves to reconsider an order entered by a magistrate judge. The proper standard for this motion, as laid out more fully below, is supplied by 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(A). The Court will therefore address TenPoint's motion for reconsideration pursuant to the relevant statute and the Federal Rules of Civil Procedure.

ruling on an evidentiary question, which is an 'abuse of discretion' standard." *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-cv-1195, 2015 WL 7251307, at *1 (N.D. Ohio Nov. 16, 2015).

"Under this deferential standard, '[t]he party seeking to reverse a Magistrate Judge's ruling concerning discovery bears a heavy burden, in part, because the Magistrate Judge is afforded broad discretion in these matters.'" *Burghardt*, 2020 WL 4350049, at *2 (quoting *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005)).

## III. DISCUSSION

TenPoint argues for reconsideration of the magistrate judge's memorandum opinion and order as it relates to two sets of discovery requests. First, TenPoint argues that the magistrate judge incorrectly determined that RFP 120 was overly broad and amounted to a fishing expedition. (Doc. No. 162, at 2–7.) Second, TenPoint argues that the magistrate judge erred in finding that RFAs 97, 98, 99, and 101 were vague and ambiguous and therefore did not require responses. (*Id.* at 7–9.) Finding no clear error or abuse of discretion, the Court overrules TenPoint's objections, affirms the magistrate judge's decisions, and denies TenPoint's motion for reconsideration as to both sets of discovery requests.

### A. RFP 120

RFP 120 seeks production of "all documents, things and electronically stored information having any of the following keywords, including any misspellings[.]" (Doc. No. 119-4 (Joint Status Report re: Discovery Dispute), at 23–25.) What follows is a list of thirty-eight terms, many of which describe parts of a crossbow, Ravin's "Helicoil" technology, and inventors TenPoint believes to have invalidated the patents at issue in this case. (*Id.*) The Court denied TenPoint's

4

motion to compel a response to this RFP because it was overly broad and amounted to a fishing expedition, citing the numerous terms requested and the lack of narrowing criteria. (Doc. No. 154, at 29.) In its motion for reconsideration, TenPoint offers to reduce the number of terms from thirty-eight to twenty-six, and it further offers to remove the requirement that Ravin produce documents containing misspellings of the keyword terms. (Doc. No. 162, at 4–7.) TenPoint also cites case law for the proposition that keyword searches are "useful tools for search and retrieval of ESI." (*Id.* at 3 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 R.F.D. 251, 256 (D. Md. 2008)).) Ravin maintains that TenPoint's requests for production, even as amended, are overbroad, irrelevant, and lack any narrowing criteria. (Doc. No. 170, at 8.) Ravin also objects to the challenged requests as duplicative, citing other TenPoint discovery requests that would produce the same documents in a more targeted manner. (*Id.* at 9–10.)

Federal Rule of Civil Procedure 26(b) permits parties to discover any relevant, unprivileged information. Fed. R. Civ. P. 26(b)(1). District courts, however, maintain discretion to limit the scope of discovery where the information sought is overly broad. Fed. R. Civ. P. 26(b)(2); *see also Goldblum v. University of Cincinnati*, 62 F.4th 244, 256–57 (6th Cir. 2023). A request for discovery is overly broad where it seeks irrelevant information, lacks sufficient limitations, or otherwise seeks information that is not "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *see also Telerico v. Lynch*, No. 1:08-cv-1680, 2009 WL 10719832, at *3 (N.D. Ohio Jan. 12, 2009) ("[T]he Court finds that most of the discovery requests are overbroad due to the lack of time and geographic restriction.").

Keyword searches in particular carry special hazards. While courts have noted that keyword searches may be useful in some contexts, they have also warned that "there are well-

known limitations and risks associated with them." *Victor Stanley*, 250 F.R.D at 260. One such risk is the tendency of keyword searches to produce results that are both overbroad and underinclusive. *See The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E–Discovery*, 8 SEDONA CONF. J. 189, 194–95 (2007). For this reason, keyword searches are often most useful when they are the product of a cooperative effort between counsel. *See Powell v. Hackel*, No. 20-13318, 2022 WL 22628807, at *1 (E.D. Mich. Jan. 12, 2022) (collecting cases). "[W]here counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft the appropriate keywords, with input from the ESI's custodians . . . , and the proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of 'false positives.'" *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009).

Here, cooperation is non-existent. Nothing in the record indicates that the custodians worked together to identify appropriate terms or that any testing has been done to ensure TenPoint's keywords would be effective search terms. TenPoint offers to reduce the number of terms by roughly twenty-five percent and to withdraw its request for misspellings. (Doc. No. 162, at 4–7.) But TenPoint does not offer any narrowing criteria, and Ravin maintains its objection to the list even as amended. (Doc. No. 170, at 8.) Such a request is "flawed from the beginning[.]" *Powell*, 2022 WL 22628807, at *1 (citations omitted).

TenPoint cites *In re Application of O'Keeffe*, 184 F. Supp. 3d 1362 (S.D. Fla. 2016) to support the notion that its request is not an overly broad fishing expedition. (Doc. No. 162, at 3.) That case involved the issuance of a subpoena for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. *Id.* at 1365–66. The applicant in *O'Keeffe* was sued for libel in Hong Kong, owing to an

6

article she wrote describing Sheldon Adelson as a "foul-mouthed billionaire[.]" *Id.* at 1365. She sought a subpoena that would compel a witness to attend a deposition in which she intended to solicit evidence that Adelson was, in fact, foul-mouthed. *Id.* at 1366. The magistrate judge denied her application, finding that it amounted to a fishing expedition. *Id.* On review, the district court determined that the magistrate judge erred because O'Keeffe's discovery request was "narrowly limited" to a particular time frame, set of interactions, and conduct. *Id.* at 1370–71. O'Keeffe's request was also based on her own discussions with the deponent, in which he had specifically recalled instances in which he observed Adelson's use of foul language. *Id.* It was not, therefore, speculative in nature.

The opposite is true here. TenPoint's request is not limited to a particular source, time, subject matter, or custodian. It asks for "all documents, things and electronically stored information" containing any of the terms at issue. (Doc. No. 119-4, at 23–25.) This case is more like *L-3 Communications Corp. v. Sparton Corp.*, 313 F.R.D. 661 (M.D. Fla. 2015). In that case, the court denied the defendant's motion to compel production of several keyword searches, citing the breadth of the search terms, their duplicative nature, and lack of relevance to the issues in the case. *Id.* at 668–670. Critical to the court's determination was the fact that, absent sufficient narrowing, the use of keyword search terms was likely to "hit on communications that lack even arguable relevance . . . ." *Id.* at 670. Any relevant information that would be produced as a result of the keyword searches would be either "unlikely to have great probative value" or duplicative of production as to other discovery requests. *Id.* at 669–70.

Many of the keywords in TenPoint's requests are only questionably relevant. For example, among TenPoint's keywords are the names of numerous crossbow inventors. (Doc. No. 119-4, at

7

23–25.) These names include Stanziale, Islas, Norkus, Darlington, Rex, Lester, Larson, Sims, Park, Popov, Caldwell, Despart, Ghetrax, and Tecnarm. (*Id.*) TenPoint contends that documents containing these names might tend to show invalidity or, potentially, support a claim of inequitable conduct. (Doc. No. 162, at 6.) But the Court has already struck portions of TenPoint's supplemental invalidity contentions referencing inequitable conduct or prior art by Park, Norkus, Despart, and Lester. (Doc. No. 149, at 18–20; *compare* Doc. No. 149, at 12–15 *with* Doc. No. 141-1 (Supplemental Invalidity Contentions), at 3–8.) The Court also struck supplemental invalidity contentions alleging that combinations of Darlington and Islas, among other prior art, rendered Ravin's claims invalid. (Doc. No. 149, at 5–8.) What relevant information documents containing these keywords could reveal is unclear, but insofar as the keywords are targeted at issues of novelty and prior art, these topics are covered by numerous other discovery requests to which Ravin responded. (*See, e.g.*, Doc. No. 119-5 (Ravin's Objections to Request for Production), at 20, 24–26, 44; *see also* Doc. No. 170, at 9–10.)

TenPoint submits additional arguments for the relevance of its remaining terms. It explains that the terms "Narrow crossbow[,]" "Helical," "HeliCoil," "Helix," "Spiral," and "Spherical" each go to the novelty of Ravin's patents. (Doc. No. 162, at 4.) The terms "Infringement," "Validity," "Invalidity," and "Prior art" are relevant to TenPoint's invalidity defense. (*Id.* at 4–5.) The names of various inventors, including the terms "Precision Shooting Equipment" and "PSE," are also directed at questions about validity and prior art. (*Id.* at 5–7.) Ravin has already produced documents in response to more targeted requests concerning novelty, invalidity, and prior art. In fact, Ravin notes several RFPs that requested documents regarding "prior art disclosed" during patent prosecution (Doc. No. 119-5, at 44), the "conception of each of the inventions" claimed in

8

the patents-in-suit (*id.* at 24), Ravin's "reduction to practice" of the claimed inventions (*id.* at 20), and comparisons between Ravin crossbows and those of competitor brands. (*Id.* at 73–74.) These requests would likely produce many of the same documents that would be produced by a broader keyword search, and they do so in a manner better calibrated to address the issues in this case.

TenPoint has not met its "heavy burden" to show that the magistrate judge committed clear error or abused her discretion in denying its motion to compel responses to RFP 120. Therefore, TenPoint's objections are overruled, and the magistrate judge's order denying the motion to compel as to RFP 120 is affirmed.

### B. RFAs 97, 98, 99, and 101

RFAs 97, 98, 99, and 101 each request an admission that Ravin knew of, and failed to disclose, non-cumulative prior art "during the pendency of" the application for the patents at issue in this case. (Doc. No. 119-6 (TenPoint's RFAs), at 16.) Ravin objected to these RFAs on multiple grounds, including that the phrase "pendency" is vague and ambiguous. (Doc. No. 119-7 (Ravin's Objections to RFAs), at 69–72.) The magistrate judge denied TenPoint's motion to compel responses to RFAs 97, 98, 99, and 101, finding that Ravin raised a "valid objection based on vagueness." (Doc. No. 154, at 49.)

An answering party is entitled to assert objections to RFAs. Fed. R. Civ. P. 36(a)(5). "An objection may 'be based on vagueness, that is, the respondent cannot answer because the meaning of the request is uncertain.'" *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (quoting 7 *Moore's Federal Practice* § 36.11[5][c]) (further citation omitted). An RFA is vague where it is worded such that it does not permit the respondent to fairly admit or deny the request. *Honeycutt v. First Fed. Bank*, No. 02-2710 M1/V, 2003 WL 1054235, at *1 (W.D. Tenn.

Mar. 5, 2003) ("Generally, the statements posed by the party seeking their admission should be capable of an answer by a yes or no.") (quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-cv-4044, 2020 WL 9549505, at *2 (S.D.N.Y. Nov. 30, 2020) (collecting cases). The party requesting admissions "bears the burden of setting forth simple and direct [RFAs] that can be answered with a simple admit or deny without explanation[.]" *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2021 WL 681403, at *3 (N.D. Ohio Feb. 22, 2021) (citations and internal quotation marks omitted).

In its motion for reconsideration, TenPoint argues for the first time that the term "pendency" is not vague or ambiguous. (Doc. No. 162, at 7–9.) It explains that "pendency" is a "foundational term of art within the patent field that refers to the period of time between the filing date of a patent application and the date on which the patent issues or goes abandoned." (*Id.* at 8.) In support of this argument, TenPoint looks to a page titled "Patents Pendency Data April 2024" available on the United States Patent and Trademark Office's ("USPTO") public website. *See Patents Pendency Data February 2024*, https://www.uspto.gov/dashboard/patents/pendency.html (last visited May 30, 2024). One section of that page defines "pendency" as, "the fact that the application is pending or awaiting a decision." *Id.* Nevertheless, the USPTO website refers to several different pendency metrics, including "First Office Action Pendency" (average of 20.2 months), "Traditional Total Pendency" (25.7 months), "Traditional Total Pendency Including Requests for Continued Examination (RCEs)" (29.3 months), and "Pendency of Applications Which Include at Least One Request for Continued Examination (RCE)" (42.6 months). *Id.*

Thus, the RFAs as written could be fairly interpreted to refer to a period as short as 20.2 months (on average) or as long as 42.6 months (again, on average). This gap is significant,

especially bearing in mind that the RFAs at issue seek an admission that Ravin knew of prior art during the relevant period, a period which could be nearly two years or up to three-and-a-half years. Ravin's answer, therefore, might well vary depending on which definition of "pendency" is intended in the RFA. *See Stephenson*, 2021 WL 681403, at *4 (citations omitted) ("While Rule 36 expressly contemplates that a responding party may qualify its answer to address any ambiguity introduced by the proponent's statement to be admitted or denied, this should be the exception and not the rule"). In any case, given the diverse use of the term "pendency," such a request does not offer Ravin the opportunity to fairly respond with a yes or no answer. *See id.* at *3.

TenPoint attempts to shore up its definition of "pendency" by referring to the Manual of Patent Examining Procedure ("MPEP"). The term "pendency" appears approximately 143 times in the MPEP, often in rules governing the obligations or rights of patent applicants. (*See* Doc. No. 162, at 8.) But the MPEP also uses the term "pendency" to refer to the general state of proceedings, not to a more specific time frame that governs all patent applications. For example, the MPEP states that "[p]atent interferences shall be administered such that pendency before the Board is normally no more than two years." MPEP (9th ed. Rev. 7, Feb. 2023) § 41.200. Another section provides that "[t]he supervisory patent examiners are expected to personally check on the pendency of every application which is up for the third or subsequent Office action with a view to finally concluding its prosecution." *Id.* at § 707.02. Neither of these uses of "pendency" relate to the point at which a patent issues or goes abandoned; they refer to other types of proceedings before the USPTO.

In reviewing a magistrate judge's order, the Court is not in a position reweigh evidence, even when "if it were the original fact-finder, it would have decided the evidence differently."

11

*Burghardt*, 2020 WL 4350049, at *2. Rather, "[i]f there are two plausible views of a matter, then a decision cannot be 'clearly erroneous.'" *Id.* (citing *Anderson*, 470 U.S. at 573–74). In light of the discrepancies among the various USPTO definitions of "pendency" and those found in the MPEP, the Court cannot say that the magistrate judge committed clear error or abused her discretion by finding that the RFAs were vague. Additionally, it is inappropriate for TenPoint to raise arguments in an objection that were available to it earlier. TenPoint's objection to the magistrate judge's order is overruled, and the magistrate judge's order is affirmed as to RFAs 97, 98, 99, and 101.[3]

## IV. CONCLUSION

For all the reasons set forth herein, TenPoint's objections to the magistrate judge's order granting in part and denying in part TenPoint's motion to compel are OVERRULED and the magistrate judge's decision is AFFIRMED. Accordingly, TenPoint's motion for reconsideration (Doc. No. 162) is DENIED.

**IT IS SO ORDERED**.

Dated: July 1, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] In conclusion, the Court notes that this is TenPoint's second unsuccessful motion for reconsideration filed in the course of just one week. The Court has previously advised that "[p]arties or counsel who file unfounded, unmerited, and unsuccessful motions for reconsideration simply because they disagree with a ruling, decision, or order should expect to be sanctioned to the full extent permitted under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927." (Doc. No. 81 (Initial Standing Order), at 10.) While the Court will not, in this instance, impose sanctions, it cautions parties in this case that future motions for reconsideration are discouraged and remain subject to sanctions.